## . UNITED STATES v. COLVARD et al.
### No. 4137.

Circuit Court of Appeals, Fourth Circuit.
April 6, 1937.

Angus D. MacLean, Sp. Asst. to Atty. Gen. (Harry W. Blair, Asst. Atty. Gen., Marcus Erwin, U. S. Atty., of Asheville, N. C., and Nere E. Day, Sp. Atty., Department. of Justice, on the brief), for appellant.

R. L. Phillips, of Robbinsville, N. C., for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is a suit instituted by the United States to enjoin the defendants from trespassing on certain lands of the Eastern Band of Cherokee Indians in Graham county, N. C., conveyed to the United States in trust pursuant to the Act of June 4, 1924, 43 Stat. 376, 25 U.S.C.A. 331 note, at page 186. The bill alleges that defendants have entered upon the lands in question and have constructed a roadway for their personal use leading from their saw-mill to a public highway; that they threaten to continue using such roadway without having obtained the consent of the United States or complied with the law and regulations in such case provided; and that they have attempted to obtain legal sanction of such roadway in a proceeding instituted before the clerk of the superior court of Graham county, N. C., against the Eastern Band of Cherokee Indians and two members of that tribe, John Tesetes-key and Solomon Bird. Attached to the bill is a certified copy of the proceedings referred to, from which it appears that an order was entered condemning a roadway fourteen feet wide over the lands in question, assessing the damages at $14 and reciting that that amount had been paid into court by the petitioners. From an order dismissing the bill for lack of jurisdiction, the United States has appealed. Three questions are presented for our consideration: (1) Whether the court had jurisdiction of a bill filed by the United States to enjoin trespass on lands conveyed to it in trust under the Act of June 4, 1924; (2) whether the court, at the suit of the United States, may grant injunction against trespass on lands so conveyed; and (3) whether the bill should be dismissed because of the proceedings therein shown to have been had in the state court.

Since this is a suit in equity brought by the United States, there would seem to be no question as to the jurisdiction of the court to entertain it, as the District Court is expressly granted jurisdiction of suits at law or in equity brought by the United States, irrespective of the amount involved. 28 U.S.C.A. § 41(1). It is the right and the duty of the government to maintain such suits as may be necessary for the protection of its Indian wards. United States v. Wright (C.C.A. 4th) 53 F.(2d) 300; United States v. Boyd (C.C.A.4th) 83 F. 547; Id. (C.C.) 68 F. 577; In re Celestine (D.C.) 114 F. 551, 552; U. S. v. Winans (C.C.) 73 F. 72, 75; United States v. Flournoy Live-Stock & Real-Estate Co. (C.C.) 71 F. 576, 579; Id. (C.C.) 69 F. 886, 894. And particularly is this true where the United States holds lands in trust for the use and benefit of these wards and suit is necessary for the protection of the lands. United States v. Wright, supra; United States v. Flournoy Live-Stock & Real-Estate Co., supra.

The second and third questions stated above are not, strictly speaking, questions of jurisdiction at all, but are addressed to the merits and involve the right of the government, on the allegations of the bill, to the relief sought. Inasmuch as they go to the foundation of the case, however, and present the questions raised by the motion to dismiss and evidently considered by the court below in holding that it was without jurisdiction "of the parties and of the subject-matter," we feel that we should pass upon them, since we are of opinion, not only that the lower court had jurisdiction of the cause, but also that the bill set

forth facts upon which, nothing else appearing, the government was entitled to ask relief.

■ It is not necessary to recite again the history of the Eastern Band of Cherokee Indians or of the lands here in controversy. We went into this fully in United States v. Wright, supra, 53 F.(2d) 300. While that suit related to the lands in Swain county known as the Qualla Boundary, the lands here involved were conveyed to the Indians by the same instrument and were conveyed by them to the United States in the same manner and under the same trust pursuant to the Act of June 4, 1924, as was the Qualla Boundary. We held in the Wright Case that this band of Indians was such a tribe as was subject to the guardianship of Congress; that the acceptance in trust of lands for allotment to them in severalty, pursuant to the Act of June 4, 1924, was a proper exercise of the power of guardianship; and that the trust in lands thus created constituted an instrumentality of the federal government which Congress might exempt from taxation. While the question here is not one of taxation but whether, for the protection of the lands which are the subject-matter of the trust, the United States may ask an injunction against repeated trespasses which adjacent landowners threaten to continue, the decision in the Wright Case virtually determines it. That case establishes the right of the United States as trustee of the lands to seek injunction for the protection of the interest of the Indians therein; and it is, of course, well settled that injunctive relief is proper against continuing trespass or against repeated trespasses where there is threat of continuance and the remedy at law is inadequate or multiplicity of suits would be avoided by the equitable remedy. Archer v. Greenville Sand, etc., Co., 233 U.S. 60, 34 S.Ct. 567, 58 L.Ed. 850; Watson v. Sutherland, 5 Wall. 74, 18 L.Ed. 580; Evans v. Victor (C.C.A.8th) 204 F. 361; The Salton Sea Cases (C.C.A.9th) 172 F. 792; Stearns-Rogers Mfg. Co. v. Brown (C.C.A.8th) 114 F. 939; U. S. Freehold Land & Emigration Co. v. Gallegos (C.C.A.8th) 89 F. 769; Pomeroy's Equitable Remedies (2d Ed.) § 496; 32 C.J. 139.

■■ As we were at pains to point out in the Wright Case, with citation of the controlling authorities, neither the fact that title to these lands was acquired through grant from the state of North Carolina, nor the fact that the Indians are citizens of that state and subject to its laws, has any bearing upon the question before us. The controlling fact is that the United States, in a proper exercise of governmental power, has accepted a conveyance of the title to lands for the benefit of these wards of the nation. Having done so, it may bring, in the proper District Court of the United States, any suit necessary or proper for the protection of the lands or the rights of the Indians therein.

■ Our attention is called to the Act of March 4, 1931, 46 Stat. 1518, which authorizes the Secretary of the Interior to defer the work of making allotments in severalty to the members of this band of Indians, as provided for in the Act of June 4, 1924, until otherwise directed by Congress; but it is clear that this statute, by deferring the allotments in severalty, did not destroy the trust with respect to the lands, but merely deferred the carrying out of one of the objects for which it had been created. Nor do we think that the trust was destroyed by the Wheeler-Howard Act of June 18, 1934, 48 Stat. 984 (25 U.S.C.A. § 461 et seq.). Assuming that the provisions of that act apply to the lands here involved, the mere forbidding of the allotment in severalty could not destroy the trust under which the lands were held by the United States for the benefit of the Indians, nor absolve it from the duty of instituting suits for the protection of their rights. On the contrary, the act contemplates the acquirement of lands for the Indians and the holding of same in trust for their use and benefit (see section 5, 48 Stat. 985, 25 U.S.C.A. § 465). And, even if title were not in the United States, there can be no question as to the right of the United States to institute suit for the protection of the rights of these wards of the nation in and to their property. United States v. Boyd (C.C.A.) 83 F. 547.

■ The third question can be briefly disposed of. The United States, the holder of the title to the lands in question, was not made a party to the proceedings in the state court, and consequently is not bound by those proceedings had behind its back. Appalachian Electric Power Co. v. Smith (C.C.A.4th) 67 F.(2d) 451, 456; Wood v. Phillips (C.C.A.4th) 50 F.(2d) 714, 717. If a roadway over the Indian lands was desired, application should have been made to the Secretary of the Interior pursuant

to provision of the Act of March 3, 1901, § 4, 31 Stat. 1058, 1084 (25 U.S.C.A. § 311). A right of way could no more be acquired over these lands by proceedings against the Indians than title to lands embraced in a government forest could be tried by suit against the forester, nor than post office property could be condemned for purposes of a street by proceedings against the postmaster. In Rollins v. Eastern Band of Cherokee Indians, 87 N. C. 229, it was held that the courts of the state of North Carolina, without the consent of Congress, were without ·jurisdiction to entertain suit on contract against these Indians. A fortiori, the state courts, without such consent, have no jurisdiction of proceedings affecting land held by the United States in trust for the Indians.

For the reasons stated, the order dismissing the suit will be reversed and the cause will be remanded for further proceedings not inconsistent herewith.

Reversed.