### UNITED STATES v. STATE OF MINNESOTA.
### No. 10905.

Circuit Court of Appeals, Eighth Circuit.
March 12, 1938.

Victor E. Anderson, U. S. Atty., of St. Paul, Minn., and Thomas E. Harris, Sp. Atty., Department of Justice, of Washington, D. C. (Lewis N. Evans, Asst. U. S. Atty., of St. Paul, Minn., on the brief), for the United States.

Ordner T. Bundlie, Asst. Atty. Gen. (William S. Ervin, Atty. Gen., State of Minnesota, on the brief), for appellee.

Before STONE, SANBORN, and WOODROUGH, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken by the United States to reverse certain orders made by the District Court in highway condemnation proceedings instituted in the name of and on behalf of the State of Minnesota.

It appears that by article 16 of the Constitution of Minnesota, trunk highway No. 61 or constitutional highway No. 1 was designated as beginning at a point on the boundary line between the states of Iowa and Minnesota and extending northerly through the city of St. Paul, thence northerly through the city of Duluth, and thence northeasterly to a point on the boundary line between the State of Minnesota and the province of Ontario in the Dominion of Canada. In the early part of 1934, the Highway Commissioner determined upon a relocation of that part of the highway between the northern boundary line of the state and the Reservation river in Cook county, Minn., and on February 15, 1934, he filed the center line and width orders designating the relocation of the highway so as to pass over and across the Grand Portage Indian Reservation. Thereupon, a petition in due form was filed in the name of the State in the proper district court of the state in the matter of the condemnation of the lands needed for the relocation of the highway, and it appeared on the face of the petition that the several tracts of land sought to be condemned and taken for the highway were lands within the Indian Reservation allotted under Indian allotments, and that the United States was the holder of the fee of the several tracts in trust for the Indians. Removal was taken to the federal court, and, the cause having come on to be heard, the State presented the petition in condemnation and the relocation orders and maps and moved for the allowance of its petition and for the appointment of appraisers to appraise and report their awards. There was no showing that authority for the construction of the highway across the Indian lands and reservation had been obtained from the Secretary of the Interior of the United States.

The United States appeared specially by the United States District Attorney for Minnesota and moved that the action be dismissed on the ground, among others, that the court was without jurisdiction for the reason that the United States had not consented to the maintenance of the condemnation suit against it. The trial court reached the conclusion: "That the consent of the United States to bring these proceedings against Indian allottees has been expressly granted and given by the United States to the State of Minnesota, pursuant to 25 United States Code Annotated, § 357, and that the United States accordingly is not a necessary party respondent to these proceedings."

The motion of the United States to dismiss was therefore denied and exception saved.

The government appealed, and motion to dismiss the appeal was denied by this court. The appeal presents the question whether the State of Minnesota has the power without the consent of the Secretary of the Interior to condemn and take the allotted Indian lands held by the United States in trust for the Indians and to open up a highway right of way across the Indian reservation.

The provisions of the Constitution pertinent to the powers of the federal government in relation to Indian tribes, Indians, Indian reservations, and Indian lands are:

Article 2, § 2, cl. 2. "[The President] shall have Power, by and with the Advice and Consent of the Senate to make Treaties, provided two thirds of the Senators present concur."

Article 1, § 8, cls. 1, 3. "The Congress shall have Power To * * * regulate Commerce with * * * the Indian Tribes."

Article 4, § 3, cl. 2. "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."

Pursuant to the constitutional provisions, the Indian lands have been drawn completely within the sovereignty of the United States and the highest dominion over them is vested in the federal government.[1] That government has undertaken the guardianship of the Indians and has reserved to itself the right to determine the manner in which the guardianship has been and shall be carried out. It has retained in itself title to the lands it permits the Indians to occupy, the authority to make laws and regulations respecting the territory, and the broad power to legislate and act for the protection of the Indians collectively and individually, wherever they may be within the territory of the United States. It is apparent that to enter upon and appropriate the individual Indian lands by the establishment of a highway easement over them and through the Indian reservation would directly and substantially affect the title of the United States in and to the lands and its dominion over them. It would restrict the government in its regulations concerning the lands, embarrass it in using the land, and substantially interfere with its right of disposal.[2] We think it is clear under the decisions that the State of Minnesota would not have power to maintain its suit for condemnation against the United States in the absence of consent given by that government. U. S. v. McGowan, 58 S.Ct. 286, 82 L.Ed. ——, January 3, 1938; Cherokee Nation v. Ry., 135 U.S. 641, 656, 10 S.Ct. 965, 34 L.Ed. 295; Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091; Utah Power & Light Co. v. U. S., 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791.

In Cherokee Nation v. Ry., 135 U.S. 641, loc. cit. 656, 10 S.Ct. 965, 971, 34 L.Ed. 295, the Supreme Court considered the question of whether the effect of state power of eminent domain was to preclude federal powers of eminent domain deemed inconsistent; the court concluded federal power was not lost, quoting from Mr. Justice Bradley in Stockton v. R. R., C.C., 32 F. 9, 19: "The argument based upon the doctrine that the states have the eminent domain or highest dominion in the lands comprised within their limits, and that the United States have no dominion in such lands, cannot avail to frustrate the supremacy given by the constitution to the government of the United States in all matters within the scope of its sovereignty. This is not a matter of words, but of things. * * * Whatever may be the necessities or conclusions of theoretical law as to eminent domain or anything else, it must be received as a postulate of the constitution that the government of the United States is invested with full and complete power to execute and carry out its purposes."

■■■ The law that governs Indian reservations and lands is discussed in Surplus Trading Co. v. Cook, 281 U.S. 647, 650, 50 S.Ct. 455, 456, 74 L.Ed. 1091, and in U. S. v. McGowan, 58 S.Ct. 286, 287, 82 L.Ed. ——, January 3, 1938. In the former case the court said:

"It is not unusual for the United States to own within a state lands which are set apart and used for public purposes. Such ownership and use without more do not withdraw the lands from the jurisdiction of the state. On the contrary, the lands remain part of her territory and within the operation of her laws, save that the latter *cannot affect the title of the United States or embarrass it in using the lands or interfere with its right of disposal.*

"A typical illustration is found in the usual Indian reservation set apart within a state as a place where the United States may care for its Indian wards and lead them into habits and ways of civilized life." (Italics supplied.)

---

[1] U. S. v. McGowan, 58 S.Ct. 286, 82 L.Ed. ——, Jan. 3, 1938; U. S. v. State of Minnesota, 270 U.S. 181, 46 S.Ct. 298, 70 L.Ed. 539; Brewer-Elliott v. U. S., 260 U.S. 77, 43 S.Ct. 60, 67 L.Ed. 140; Minnesota v. Hitchcock, 185 U.S. 373, 22 S.Ct. 650, 46 L.Ed. 954; Cherokee Nation v. Ry., 135 U.S. 641, 10 S.Ct. 965, 34 L.Ed. 295.

[2] Clairmont v. U. S., 225 U.S. 551, loc. cit. 556, 32 S.Ct. 787, 56 L.Ed. 1201; Hallowell v. U. S., 221 U.S. 317, 323, 324, 31 S.Ct. 587, 55 L.Ed. 750; U. S. v. Sutton, 215 U.S. 291, 30 S.Ct. 116, 54 L.Ed. 200; Utah & N. Ry. v. Fisher, 116 U.S. 28, 6 S.Ct. 246, 29 L.Ed. 542; Cf. U. S. v. Unzeuta, 281 U.S. 138, 50 S.Ct. 284, 74 L.Ed. 761.

In U. S. v. McGowan, the court said:

"Congress alone has the right to determine the manner in which this country's guardianship over the Indians shall be carried out, [citing in footnote, U. S. v. Sandoval, 231 U.S. 28, 34 S.Ct. 1, 58 L.Ed. 107] * * *

"The government retains title to the lands which it permits the Indians to occupy. The government has authority to enact regulations and protective laws respecting this territory. [Citing in footnote, Hallowell v. U. S., 221 U.S. 317, 31 S.Ct. 587, 55 L.Ed. 750; Constitution, art. 4, § 3, cl. 2]. 'Congress possesses the broad power of legislating for the protection of the Indians wherever they may be within the territory of the United States.' United States v. Ramsey, 271 U.S. [467], 471, 46 S.Ct. 559, 70 L.Ed. 1039."

In Utah Power & Light Co. v. U. S., 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791, certain states filed brief as amici curiæ to urge upon the Supreme Court the proposition that, "The existence of easements of a public nature over vacant federal lands does not interfere with the disposal of such lands by the federal government, but is in aid thereof; and the claim made by the States of the right to control the creation and continuance of such easements, within their respective territorial jurisdictions, does not conflict with the power of Congress 'to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States,'" and further, that the matter was for state police power, not for Congress. Loc. cit. p. 400, 401 of 243 U.S., 37 S.Ct. 387, 61 L.Ed. 791. But the Supreme Court held that the defendant power companies must comply with the regulations of the Secretary of the Interior or move off the land which had been placed (after company occupancy in some instances) in a federal forest reservation; it held further that state authority of eminent domain could not justify the presence of the companies on government owned land, saying at page 404, 405 of 243 U.S., 37 S.Ct. 387, 389, 61 L.Ed. 791:

"Not only does the Constitution (art. 4, § 3, cl. 2) commit to Congress the power 'to dispose of and make all needful rules and regulations respecting' the lands of the United States, but the settled course of legislation, congressional and state, and repeated decisions of this court, have gone upon the theory that the power of Congress is exclusive, and that only through its exercise in some form can rights in lands belonging to the United States be acquired. True, for many purposes a state has civil and criminal jurisdiction over lands within its limits belonging to the United States, but this jurisdiction does not extend to any matter that is not consistent with full power in the United States to protect its lands, to control their use, and to prescribe in what manner others may acquire rights in them. Thus, while the state may punish, * * * it may not tax the lands themselves or invest others with any right whatever in them. [Citing cases.] From the earliest times Congress by its legislation, applicable alike in the states and territories, has regulated in many particulars the use by others of the lands of the United States, has prohibited [etc.] * * * *and has provided for and controlled the acquisition of rights of way over them for highways,* railroads, * * * and the like. The states and the public have almost uniformly accepted this legislation as controlling, and in the instances where it has been questioned in this court its validity has been upheld and its supremacy over state enactments sustained. [Citing cases.] * * *

"It results that state laws, including those relating to the exercise of the power of eminent domain, have no bearing upon a controversy such as is here presented, save as they may have been adopted or made applicable by Congress." (Italics supplied.)

■ We turn to the contention that Congress gave its consent to these proceedings in condemnation of the Indian lands for highway purposes by the Act of Congress of March 3, 1901, 31 Stat. 1084, and the concluding provision of section 3 of the act, 25 U.S.C.A. § 357.

The Act of March 3, 1901, was the Indian Appropriation Act making appropriation for the fiscal year 1902, and provisions were incorporated in it concerning the construction of telephone and telegraph lines over and through Indian reservations under regulations to be prescribed by the Secretary of the Interior, and also provisions applicable to condemnation or other procedure by state or local authorities for the opening and establishment of public highways through any Indian reservation over allotted Indian lands. The provision which we deem applicable and controlling as to such highway condemnation proceedings and the consent of the United States therefor reads: Section 4, 25 U.S.C. § 311, 25 U.S.C.A. § 311, Opening Highways:

"The Secretary of the Interior is authorized to grant permission, upon compliance with such requirements as he may deem necessary, to the proper State or local authorities for the opening and establishment of public highways, in accordance with the laws of the State or Territory in which the lands are situated, through any Indian reservation or through any lands which have been allotted in severalty to any individual Indian under any laws or treaties but which have not been conveyed to the allottee with full power of alienation."

The plain intendment of this section is that the consent of the United States to the maintenance of condemnation proceedings to open up highways through the Indian reservation and the allotted lands is not given but is withheld, except upon permission granted by the Secretary of the Interior. Such was the conclusion of the Circuit Court of Appeals of the Fourth Circuit upon consideration of this provision of the act.

In U. S. v. Colvard, 4 Cir., 89 F.2d 312, 315, that court held that it was not only the right, but the duty of the United States to enjoin individuals from building a highway across lands held by the United States in trust for two Indians. The individuals had secured a condemnation of the lands under state authority, but the court held that the United States was not bound by the condemnation proceedings because it was not a party thereto, and because the state courts (which had held themselves devoid of jurisdiction against the United States in contract cases) had "no jurisdiction of proceedings affecting land held by the United States in trust for the Indians." The court said:

"If a roadway over the Indian lands was desired, application should have been made to the Secretary of the Interior pursuant to provision of the Act of March 3, 1901, § 4, 31 Stat. 1058, 1084 (25 U.S.C.A. § 311).

"A right of way could no more be acquired over these lands by proceedings against the Indians than title to lands embraced in a government forest could be tried by suit against the forester, nor than post office property could be condemned for purposes of a street by proceedings against the postmaster."

■ When the concluding provision of section 3 of the act of March 3, 1901, 25 U.S.C.A. § 357, relied on by the State, is read in connection with its context, the rest of section 3, 25 U.S.C.A. § 319, it becomes apparent that the provision does not and was not intended to conflict with or to withdraw the conditions laid down in section 4 of the act, supra, upon which the United States consented to proceedings to open up highways through allotted Indian lands. Section 3 reads:

"The Secretary of the Interior is authorized and empowered to grant a right of way, in the nature of an easement, for the construction, operation, and maintenance of telephone and telegraph lines and offices * * * through any Indian Reservation, * * * or through any lands which have been allotted in severalty to any individual Indian under any law or treaty, but which have not been conveyed to the allottee with full power of alienation, upon the terms and conditions herein expressed. No such lines shall be constructed across Indian lands, as above mentioned, until authority therefor has first been obtained from the Secretary of the Interior, and the maps of definite location of the lines shall be subject to his approval.

"The compensation to be paid the tribes in their tribal capacity and the individual allottees for such right of way through their lands shall be determined in such manner as the Secretary of the Interior may direct, and shall be subject to his final approval."

"Lands allotted in severalty to Indians may be condemned for any public purpose under the laws of the State or Territory where located in the same manner as land owned in fee may be condemned, and the money awarded as damages shall be paid to the allottee."

The context shows that the concluding provision relates merely to permissive procedure in authorized suits for condemnation of allotted Indian lands. The power to make such condemnation for the opening of highways remains conditional as provided in section 4, supra.

■ The United States not having consented to the maintenance of the condemnation suit of the State against it, the court is without jurisdiction to proceed. Morrison v. Work, 266 U.S. 481, 485, 486, 45 S.Ct. 149, 69 L.Ed. 394; U. S. v. Colvard, 4 Cir., 89 F.2d 312; Turner v. U. S., 248 U.S. 354, 359, 39 S.Ct. 109, 63 L.Ed. 291; U. S. v. Babcock, 250 U.S. 328, 331, 39 S.Ct. 464, 63 L.Ed. 1011; see Wood v. Phillips, 4 Cir., 50 F.2d 714; Compagnie Etc. v. Canal Zone, 5 Cir., 90 F.2d 225; U. S. v. Turner, 8 Cir., 47 F.2d 86; Boeing Air T. v. Farley, 64 App.D.C. 162, 75 F.2d 765; Transcontinental & West-

ern Air v. Farley, 2 Cir., 71 F.2d 288. Cf. Minnesota v. Hitchcock, 185 U.S. 373, loc. cit. 385, 22 S.Ct. 650, 46 L.Ed. 954, et seq.

The fact that removal from the state court to the federal court was obtained by the United States Attorney through stipulation did not effect a general appearance. Employers' Reinsurance Corp. v. Bryant, 299 U.S. 374, 377, 57 S.Ct. 273, 81 L.Ed. 289; Lambert Run Coal Co. v. B. & O. R. R., 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671. The District Attorney had no power to waive conditions or limitations imposed by statute in respect of suits against the United States. Munro v. U. S., 58 S.Ct. 421, 82 L. Ed. ——, January 31, 1938; Stanley v. Schwalby, 162 U.S. 255, 270, 16 S.Ct. 754, 40 L.Ed. 960; Finn v. U. S., 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed. 128.

Reversed with directions to dismiss.