## UNITED STATES v. STATE OF MINNESOTA.
### No. 11689.

Circuit Court of Appeals, Eighth Circuit.
July 29, 1940.

John F. Cotter, Atty., Department of Justice, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Victor E. Anderson, U. S. Atty., of St. Paul, Minn., Charles R. Denny, Jr., Atty., Department of Justice, and W. Robert Koerner, Atty., Department of Justice, both of Washington, D. C., on the brief), for appellant.

Chester S. Wilson, Deputy Atty. Gen. (J. A. A. Burnquist, Atty. Gen., Arthur Christofferson, Deputy Atty. Gen., and Sam W. Campbell and Bert McMullen, Sp. Asst. Attys. Gen., on the brief), for appellee.

Before GARDNER and SANBORN, Circuit Judges, and COLLET, District Judge.

GARDNER, Circuit Judge.

This matter is before us on an appeal from two orders of the lower court, one denying the motion of the United States to dismiss the proceedings and the other from an order granting the petition of the State of Minnesota for condemnation of certain lands for highway purposes.

The land involved is a tract of allotted Indian land held in trust by the United States, subject to the restrictions against alienation contained in Section 5 of the General Allotment Act of February 8, 1887, 24 Stat. 388, 389, 25 U.S.C.A. § 348. The Indian owners of the allotment are members of the Minnesota Chippewa tribe. The proceeding was brought to acquire a right of way for State Trunk Highway No. 61, established under Article 16 of the Minnesota Constitution and laws passed pursuant thereto. This highway has been permanently located, improved, maintained and traveled from the City of Duluth northeasterly along the shore of Lake Superior to a point within the Grand Portage Indian Reservation. From this point the proposed new route, which has not yet been improved, continues in a northeasterly course following generally the lake shore, through the Reservation, and beyond to a point on the international boundary. All of the right of way for the proposed new route has been acquired by the State of Minnesota by purchase or condemnation, except the one parcel of Indian land involved in this case and other parcels of Indian lands which were involved in State of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235. Except for these parcels of Indian lands, all the lands traversed by the route were in private ownership when the right of way was acquired. A large part of the land within the Reservation is owned by white persons and much other land in the Reservation, including the parcel involved in this proceeding, has been allotted to Indians in severalty.

The State has not secured permission or authority from the Secretary of the In-

terior for the construction of the highway in question, nor for the institution of this proceeding. The United States appeared specially and moved to dismiss the proceeding on the ground that the court was without jurisdiction because the Secretary of the Interior had not consented to the establishment of the highway, and the United States had not consented to be sued. The court having denied this motion and entered an order granting the petition for condemnation, the United States prosecutes this appeal.

That the State of Minnesota is vested with the power of eminent domain is not challenged. The question involved is whether the State may by virtue of Section 3 of the Act of March 3, 1901, 25 U.S.C.A. § 357, maintain this proceeding to condemn an easement over the allotted land for the establishment of a public highway, without having first secured from the Secretary of the Interior permission for the opening and establishment of such public highway through allotted Indian land, as provided by Section 4 of the Act of March 3, 1901, 25 U.S.C.A. § 311. Section 3 of the Act of March 3, 1901, 25 U.S.C.A. § 357, provides as follows: "Lands allotted in severalty to Indians may be condemned for any public purpose under the laws of the State or Territory where located in the same manner as land owned in fee may be condemned, and the money awarded as damages shall be paid to the allottee."

If this statute stood alone there could scarcely be any doubt of the right to condemn Indian lands allotted in severalty. But it is urged that Section 4 of this Act must be considered in connection with Section 3. Section 4 reads as follows: "That the Secretary of the Interior is hereby authorized to grant permission, upon compliance with such requirements as he may deem necessary, to the proper State or local authorities for the opening and establishment of public highways, in accordance with the laws of the State or Territory in which the lands are situated, through any Indian reservation or through any lands which have been allotted in severalty to any individual Indians under any laws or treaties but which have not been conveyed to the allottee with full power of alienation." 25 U.S.C.A. § 311.

It is contended by the United States that the apparent absolute right of condemnation granted by Section 3 is modified by the provisions of Section 4, to the extent that such right can be exercised only on permission granted by the Secretary of the Interior.

In United States v. State of Minnesota, 95 F.2d 468, this court, on the authority of United States v. Colvard, 4 Cir., 89 F.2d 312, sustained this contention. In that case the proceeding had been instituted in the State court and removed to the Federal Court. We held the lower court was without jurisdiction because the United States had not consented to the maintenance of the condemnation suit. The Supreme Court (Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 296, 83 L.Ed. 235) sustained our decision but based its decision upon the sole ground that the suit had been commenced in a State court, and that the act did not authorize the maintenance of such a suit in the State court; that as the State court was without jurisdiction, the Federal court was likewise without jurisdiction upon its removal. The court specifically declined to consider "whether, as a matter of substantive law, the lack of assent by the Secretary of the Interior precluded maintenance of the condemnation proceeding." In denying the right of the State to maintain condemnation proceedings affecting Indian allotted land, except on permission granted by the Secretary of the Interior, this court followed what on its face seemed to be the teaching of the decision of the Fourth Circuit in United States v. Colvard, supra [89 F.2d 314], where it was said that, "If a roadway over the Indian lands was desired, application should have been made to the Secretary of the Interior pursuant to provision of the Act of March 3, 1901, § 4, 31 Stat. 1058, 1084 (25 U.S.C.A. § 311). A right of way could no more be acquired over these lands by proceedings against the Indians than title to lands embraced in a government forest could be tried by suit against the forester, nor than post office property could be condemned for purposes of a street by proceedings against the postmaster."

In presenting this authority, the Government contended that the lands concerned in the Colvard case were allotted lands, and it was upon this assurance that the Colvard case was accepted and followed as persuasive authority. But when the case from this court went to the Supreme Court of the United States, the Attorney General filed a supplemental memorandum on behalf of the United States, in which it was frankly

recited that, "The reply brief filed on behalf of the State of Minnesota correctly points out that United States v. Colvard, 89 F.2d 312 (CCA 4) was erroneously summarized in the brief for the United States in opposition. The land concerned there was, as the Attorney General of Minnesota points out, tribal rather than allotted lands." This vital fact was not disclosed by the opinion in the Colvard case, and this court assumed that the attorneys for the United States were correct in asserting that the lands there concerned were allotted lands.

Section 3 does not purport to authorize the maintenance of condemnation proceedings affecting tribal lands, but only "lands allotted in severalty to Indians," and, confessedly, without specific authorization condemnation proceedings could not be maintained. As has already been noted, the Supreme Court did not pass upon the question so that the only authority sustaining the present contention of the United States is the decision of this court based, as we have observed, upon the erroneous assumption that the decision of the Fourth Circuit in the Colvard case was authority supporting the proposition that condemnation proceedings could not be maintained to condemn lands allotted in severalty to Indians, without permission granted by the Secretary of the Interior. Our prior decision, therefore, finds no support in the Colvard case; neither is it supported by the decision of the Supreme Court (Minnesota v. United States, supra). Because of the special circumstances, we are urged to review our prior decision, the correctness of which is vigorously assailed.

■ The land involved, being allotted in severalty, is no longer a part of the reservation, nor is it tribal land. The virtual fee is in the allottee, with certain restrictions on the right of alienation. This restriction, consistent with the Government's paternal policy toward the Indians, was doubtless to protect the Indian from being overreached in the sale of his land. The statutes seem definitely to offer two methods of procedure for the acquisition of a right of way for public highway. Section 3, 25 U.S.C.A. § 357, authorizes the maintenance of condemnation proceedings. Ordinarily, the owner of a fee title to real estate may grant a right of way over his land, but although the allottee is vested with fee title, his right of alienation is restricted, and hence, it would not be possible to secure a right of way from such allottee by purchase, however desirable it might be, and however advantageous to the allottee. By Section 4 of the Act, 25 U.S.C.A. § 311, the Secretary of the Interior is authorized to grant permission for the opening and establishment of a public highway through lands allotted in severalty. Thus, it was made possible to acquire such a right of way by either of two methods, the Government having consented to each of these methods. So considered, each of these sections is an effective and reasonable provision in the procedure for the acquisition of a right of way, neither dependent upon the other.

It is observed that the compilers of the United States Code divided the Act of March 3, 1901, into three sections. The first paragraph of Section 3 became Section 319, the second paragraph became Section 357, while section 4 became Section 311. Sections 311 and 319 were placed in Chapter 8, which relates to various rights of way and easements over Indian lands, while Section 357 was placed in Chapter 9, which relates to lands allotted in severalty to individual Indians. The compilers treated the three sections as separate independent provisions.

The administrative officers of the Government, charged with the administration of this Act, have consistently construed it as authorizing the condemnation of allotted lands without the consent of the Secretary of the Interior. The Department of the Interior, in its booklet entitled "Regulations of the Department of the Interior Concerning Rights of Way over Indian Lands," published in 1929, pointed out the various laws applicable to the granting of rights of way through Indian lands, tribal and allotted, and gave direction for procedure. Sections 68, 69 and 70, under the heading of "Condemnation of Allotted Lands," provide:

"68. The condemnation of allotted Indian lands for any public purpose in accordance with the laws of the State wherein the lands are situated is authorized by the last paragraph of section 3 of the Act of March 3, 1901 (31 Stat. 1, 1058-1083-1084).

"69. Any project for which private lands could be condemned under State laws is held to be a public purpose within the meaning of the Act of March 3, 1901, above cited.

774

"70. The superintendent or other officer in charge is expected to keep in close touch with matters affecting the interests of the Indians within his jurisdiction and to report immediately through the Commissioner of Indian Affairs when any condemnation proceedings are instituted. All information available regarding such proceedings, particularly a description of the lands involved, should be given so that the Department of Justice may be requested to enter an appearance in such proceedings in behalf of the owners, and to take such other action for their protection as may be warranted by the law and the facts."

The Land Decisions of the Department of. the Interior clearly indicate that that department construed Section 3 of the Act as granting the right of condemnation. Thus, in Condemnation of Lands Allotted in Severalty to Indians, 49 L.D. 396, rendered January 2, 1923, it was said: "The fact remains, however, that allotted Indian lands can still be condemned for public purposes where necessary under the provisions of the Act of March 3, 1901, supra. In other words, the remedy rising there is simply an alternative one rather than a concurrent or an exclusive procedure. Even prior to the Act of March 3, 1901, this department held that a State could condemn allotted Indian lands for public purposes. See 19 L.D. 24. Again, the provisions of that Act came before this Department in 1905 and in an opinion dated May 11, 1905 (unreported) the then Assistant Attorney General for this Department held that under the provisions of that Act and of certain statutes of the State of Utah, lands allotted to the Indians within the Uintah Reservation could be condemned in favor of persons or corporations desiring to acquire rights of way for canals, ditches, etc. In concluding that opinion it was said: 'These quotations from the law of Congress and the laws of the State answer the inquiry and leave no room for discussion or argument. Indian allotments are subject to be condemned for public purposes under the laws of the State or territory where located, before the issue of final patent, to the same extent as if the allottee held the fee to the land."

The contemporaneous construction placed upon these statutes by the department charged with the duty of executing them, and which has been acted upon for many years, should not be lightly overturned or disregarded. Swendig v. Washington Water Power Co., 265 U.S. 322, 44 S.Ct. 496, 68 L.Ed. 1036; Logan v. Davis, 233 U.S. 613, 34 S.Ct. 685, 58 L.Ed. 1121; Wisconsin v. Illinois, 278 U.S. 367, 49 S.Ct. 163, 73 L.Ed. 426; Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457; McLaren v. Fleischer, 256 U.S. 477, 41 S.Ct. 577, 65 L.Ed. 1052.

In Swendig v. Washington Water Power Co., supra [265 U.S. 322, 44 S.Ct. 498, 68 L.Ed. 1036], in which easements over Indian lands were involved, the Supreme Court, in referring to the construction placed upon the Acts of Congress by the Department of the Interior, said: "The construction and application of the act so made and provided for have been followed since that time. If the meaning of the act were not otherwise plain, this interpretation would be a useful guide to the ascertainment of the legislative intention. It is a 'settled rule that the practical interpretation of an ambiguous or uncertain statute by the Executive Department charged with its administration is entitled to the highest respect, and, if acted upon for a number of years, will not be disturbed except for very cogent reasons.'"

We are clear that this court was in error in basing its conclusion in United States v. Minnesota, 8 Cir., 95 F.2d 468, upon the ground that the lower court was without jurisdiction because consent of the Secretary of the Interior for the maintenance of the procedure had not been obtained, instead of on the ground that the court lacked jurisdiction because the proceeding had been commenced in the State court. We are not unmindful of the doctrine of stare decisis, but recognize that it is entitled to great weight and should ordinarily be adhered to, unless the reasons therefor no longer exist, are clearly erroneous, or manifestly wrong. The strong respect for precedent which inheres in our legal system has its qualifications and limitations. It does not call for a blind, arbitrary and implicit following of precedent, but recognizes, no vested rights nor rule of property being involved, that it is more important as to far reaching judicial principles that the court should be right than that it merely be in harmony with its previous decisions. Such a respect for precedent balks at the perpetuation of error, and the doctrine of stare decisis is, after all, subordinate to legal reason and is properly

departed from if and when such departure is necessary to avoid the perpetuation of error.

Our decision in United States v. Minnesota, supra, in so far as it conflicts with the views herein expressed, is therefore overruled and the judgment appealed from is affirmed.