**UNITED STATES v. OKLAHOMA GAS & ELECTRIC CO.**

No. 2390.

Circuit Court of Appeals, Tenth Circuit.

March 23, 1942.

350

W. Robert Koerner, of Oklahoma City,
Okl. (Norman M. Littell, Asst. Atty. Gen.,
Charles E. Dierker, U. S. Atty., and George
H. McElroy, Asst. U. S. Atty., both of
Oklahoma City, Okl., and Vernon L. Wilkinson, Atty., Department of Justice, of
Washington, D. C., on the brief), for appellant.

Robert M. Rainey, Jr., of Oklahoma City,
Okl. (R. M. Rainey and Streeter B. Flynn,
both of Oklahoma City, Okl., on the brief),
for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

We are asked to decide whether the appellee, Oklahoma Gas & Electric Company, herein called electric company, may by permission of the state of Oklahoma, but without permission, or consent, of the Secretary of the Interior, construct and maintain a rural electric line upon and along a state highway, constructed and maintained by the state, a portion of which traverses land allotted in severalty to a restricted Indian of the Kickapoo Tribe, the title to which land is held in trust by the Secretary of the Interior. The highway is constructed across and upon the said Indian land in pursuance of a permit, granted to the state of Oklahoma by the Secretary of the Interior under provisions of section 4 of the Act of March 3, 1901, 31 Stat. 1084, 25 U.S.C.A. § 311,[1] which authorizes the Secretary of the Interior to grant a permit to the state to open and establish a highway across Indian land in accordance with the laws of the state, wherein situated. The electric company has not applied for, or secured a permit from the Secretary of the Interior to construct and maintain a rural electric line across the Indian land, or along and upon the right-of-way granted the State, and contends that it is not required to do so.

The question for consideration is the meaning, purpose, and intent to be placed upon section 4 of the 1901 Act, supra, and more precisely, the meaning, purpose, and intent of the Congressional use of the words "for the opening and establishment of public highways in accordance with the laws of the State or Territory in which the lands are situated."

The facts, as stipulated and agreed, show that pursuant to the Act of March 3, 1893, Chapter 203, Article 4, 27 Stat. 557, the land in question was allotted in severalty to a restricted Kickapoo Indian. The title remained in the United States for the use and benefit of the allottee and was, at the time herein complained of, restricted land held in trust by the Secretary of the Interior for the use and benefit of the heirs of the original allottee. On July 9, 1926, in furtherance of its design to construct a system of highways, the state of Oklahoma, through its Highway Commission, applied to the Secretary of the Interior for permission to open and establish a public highway upon and across the land in question, in accordance with section 4 of the 1901 Act, supra. After such application, together with a map of definite location, had been filed with the Secretary of the Interior, the United States, through the Secretary of the Interior, filed a claim on behalf of the restricted Indians in the sum of $1,275, as compensation for the establishment of the highway across and upon the allotment in question, which was by the state of Oklahoma paid to the Secretary of the Interior for the benefit of the restricted Indian heirs.

On January 20, 1928, the Assistant Secretary of the Interior approved the application by endorsing on the map of definite location the following: "Approved subject to the provisions of the Act of March 3, 1901 (31 Stat.L., 1058-1084), Department regulations thereunder; and subject also to any prior valid existing right or adverse claim." The highway was opened and established. Thereafter, and on the 9th day of October, 1936, the Highway Commission of the state of Oklahoma, acting under authority of the state laws, granted to the appellee, the electric company, a license and permit to erect, construct, and maintain a system of poles, and other electrical equipment, upon and along the said highway, which included that part of the restricted Indian allotment, over which the Secretary of the Interior had granted permission for the establishment of the said highway. Thereafter, and in pursuance of the said license and permit granted by the said Highway Commission, the appellee in constructing its rural electric service line for the purpose of supplying electrical current to adjacent landowners, erected eight poles along and upon that portion of the high-

[1] Section 4 of the Act of March 3, 1901: "That the Secretary of the Interior is hereby authorized to grant permission, upon compliance with such requirements as he may deem necessary, to the proper State or local authorities for the opening and establishment of public highways, in accordance with the laws of the State or Territory in which the lands are situated, through any Indian reservation or through any lands which have been allotted in severalty to any individual Indian under any laws or treaties but which have not been conveyed to the allottee with full power of alienation."

way which traversed the allotted land in question, and on which there was installed the necessary power line.

On the theory that the electric company had no authority to install its power lines on that part of the highway, which traversed the restricted allotted land without first having obtained a permit from the Secretary of the Interior, the United States, through the Secretary of the Interior, brought this suit for declaratory adjudication of its asserted rights, 28 U.S.C.A. § 400, and for a mandatory injunction to remove the poles heretofore erected, and for money judgment in the sum of $5 per pole, in the total amount of $40.

The electric company contends that the authority granted to the state of Oklahoma by the Secretary of the Interior, under section 4 of the 1901 Act, supra, to open and establish a highway in accordance with the laws of the state, carried with it the authority of the state to grant the electric company a permit to construct its lines along and upon that portion of the highway which traversed the allotted land, and that the Secretary of the Interior had no power or authority to interfere with the same. The electric company's contention was sustained and relief denied by the trial court.  D.C. 37 F.Supp. 347.

In the first instance, the authority to open and establish a state highway across Indian land allotted in severalty to restricted Indians is derived from the federal statute, section 4 of the 1901 Act, and the extent to which that power may be exercised is subject to the limitations placed upon it by the Act itself.  Its interpretation and construction is peculiarly within the competence of the federal courts, uninfluenced by any state notions of its meaning and purpose.  State or local laws are applicable only to the extent to which they are made applicable by the federal statute, and the extent to which they are made applicable by the federal statute is also a federal question.  United States v. Oregon, 295 U.S. 1, 28, 55 S.Ct. 610, 79 L.Ed. 1267; Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927; McKelvey v. United States, 260 U.S. 353, 359, 43 S.Ct. 132, 67 L.Ed. 301; Oklahoma v. Texas, 258 U.S. 574, 595, 42 S.Ct. 406, 66 L.Ed. 771, and Utah Power & Light Company v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791.  The question, therefore, is to what extent were the state laws made applicable to the opening and establishment of the highway in question, and requires a consideration of the statutory scheme designed to subject lands under the exclusive control of the United States to the construction of highways, electric, telephone and telegraph lines necessary and essential to the needs of an advancing and progressive civilization.

The statute here in question is but a fragment of numerous acts of Congress, which have in various forms granted rights-of-way in the nature of easements across and upon public domain, national parks, Indian, and other reservations, under the exclusive control of the National Government.[2]  It is sufficient to say that each grant, or authorization of a right-of-way upon public domain, or other reservation, has its proper setting in the scheme of national affairs as they relate to progress and development.

Congress authorized the Secretary of the Interior to permit the use of rights-of-way upon public lands and national forests of the United States for the purpose of generating, or distributing electric power by the Act of May 14, 1896, 29 Stat. 120, 43 U.S.C.A. § 957,[3] but did not mention Indian lands or Indian reservations.

---

[2] Act of July 26, 1866, c. 262, Section 8, 14 Stat. 253, R.S. Section 2477, 43 U.S.C.A. § 932.  Act of July 5, 1884, c. 214, Section 6, 23 Stat. 104, 43 U.S.C.A. § 933.  Act of March 3, 1875, c. 152, Sections 1–6, 18 Stat. 482, 483, 43 U.S.C.A. § 934–939.  Act of August 30, 1890, c. 837, Section 1, 26 Stat. 391, 43 U.S.C.A. § 945.  Act of March 3, 1891, c. 561, Section 18, 26 Stat. 1101, 43 U.S.C.A. § 946, as amended March 4, 1917, c. 184, Section 1, 39 Stat. 1197.  Act of May 11, 1898, c. 292, Section 2, 30 Stat. 404, 43 U.S.C.A. § 951, as amended March 4, 1917, c. 184, Section 2, 39 Stat.

1197.  Act of June 26, 1906, c. 3548, 34 Stat. 481, 43 U.S.C.A. § 944.

[3] "The Secretary of the Interior is authorized and empowered, under general regulations to be fixed by him, to permit the use of right of way to the extent of twenty-five feet, together with the use of necessary ground, not exceeding forty acres, upon the public lands and national forests of the United States by any citizen or association of citizens of the United States for the purposes of generating, manufacturing, or distributing electric power."  See, also, Act of May 11, 1898, 30 Stat. 404, 43 U.S.C.A. § 956.

The Act of May 14, 1896, supra, was superseded by the Act of February 15, 1901, 31 Stat. 790, 43 U.S.C.A. § 959. Under the provisions of this Act, the Secretary of the Interior is authorized and empowered under general regulations to be fixed by him, to permit the use of rights-of-way through public lands and reservations of the United States for electric plants, poles and lines for generation and distribution of electric power; for telephone and telegraph purposes, and for canals, ditches, pipes and pipe lines, flumes and tunnels or other water conduits. The Act provides the details incident to the granting of the permit and specifically provides that the permission given by the Secretary of the Interior can be revoked in his discretion, and does not confer any right, or easement, or interest in, to or over any reservation. The statute makes use of the word "reservation" without specifically mentioning Indian reservations or Indian lands. It is noticeably silent on Indian lands allotted in severalty.

The Act of February 15, 1901, supra, is contemporaneous with the Act of March 3, 1901, supra (of which section 4 is a part). The Act of March 3, 1901, commonly called sections 3 and 4, has been separately codified as sections 319, 357 and 311, 25 U.S. C.A., and in the Statutes at Large as sections 1083, 1084. See United States v. Minnesota, 8 Cir., 113 F.2d 770. Each of these sections of the Act has direct relation to rights-of-way through Indian reservations, tribal lands, and lands allotted in severalty to any individual Indian under any law or treaty. The first paragraph of Section 3, 31 Stat. 1083, 25 U.S.C.A. § 319, empowers the Secretary of the Interior to grant a right-of-way, in the nature of an easement, for the construction, operation, and maintenance of telephone and telegraph lines and offices for general telephone and telegraph business, through any lands held by an Indian tribe or nation in the Indian territory; through any lands reserved for an Indian agency or Indian school, "or through any lands which have been allotted in severalty to any individual Indian under any law or treaty, but which have not been conveyed to the allottee with full power of alienation." The Act further provides for the supervision by the Secretary of the Interior over the construction of the telephone lines; provides compensation to be paid therefor, and for a stipulated tax, but the Act does not au-

thorize the Secretary of the Interior to revoke the easement. Neither does the Act mention electric plants, poles, or lines, and it has been held that this section does not authorize the installation or operation of electric lines, upon, across, or through the lands covered thereby. Swendig v. Washington Water Power Company, 265 U.S. 322, 44 S.Ct. 496, 68 L.Ed. 1036.

The second paragraph of section 3 of the Act of March 3, 1901, supra, c. 832, Section 3, 31 Stat. 1084, 25 U.S.C.A. § 357, specifically authorizes the condemnation of lands allotted in severalty to Indians for any public purpose in accordance with the laws of the State or Territory where located, as other lands, and provides that the money awarded as damages shall be paid to the allottees. United States v. Minnesota, supra. Section 4 of the same Act, 31 Stat. 1084, 25 U.S.C.A. § 311, is the statute under which the state of Oklahoma obtained permission from the Secretary of the Interior to open and establish the highway in question, over and across the land allotted in severalty to the restricted Indian, in accordance with the laws of the state of Oklahoma.

■ A consideration of the contemporaneous acts of February 15, 1901, supra, and of March 3, 1901, supra, when considered in their proper setting leads to the conclusion that Congress intended to treat lands allotted in severalty to restricted Indians separately and apart, and in an entirely different manner, when granting rights-of-way for the construction of public utility lines and highways. Obviously, the power to condemn lands allotted in severalty to an individual Indian did not extend to Indian reservations, tribal lands, national forests, and other lands under the exclusive jurisdiction of the Federal government. As to these lands, only the power to permit the use of a right-of-way under varying forms and conditions was authorized. This view finds practical support in the common knowledge that lands allotted in severalty to Indians in Oklahoma are essentially a part of the community in which they are situated and subject to limited control by the state, or its political sub-divisions. The soil is tilled and improvements are constructed thereon, as other lands in the same vicinity. The value is enhanced by these public improvements, including the benefits of rural electrification. Land allotted in severalty is no

longer part of the reservation, nor is it tribal land; the virtual fee is in the allottee with certain restrictions on the right of alienation. United States v. Minnesota, supra. Thus a plain and clear distinction is made between the granting of rights-of-way over and across reservations or tribal lands and those allotted in severalty to restricted Indians.

In the acquisition of the right-of-way for highway purposes, the state of Oklahoma had two remedies. First, it was authorized by federal statute, 31 Stat. 1084, 25 U.S.C.A. § 357, to condemn the right-of-way in accordance with the laws of the state of Oklahoma, thereby vesting in itself a permanent easement, the exact quality of which it is unnecessary here to determine, except it is certain that it would be authorized to permit the use of the same for the purposes which the appellee seeks to subject it. Second, under section 4, 25 U.S.C.A. § 311, the Secretary of the Interior was authorized, on application by the state, to grant a permit to open and establish the highway in accordance with the laws of the state. Under this section of the statute, it could acquire a permit to construct a highway across an Indian reservation, which it was not authorized to condemn under 25 U.S.C.A. § 357. United States v. Minnesota, supra.

We deem it unnecessary to determine the exact quality of the estate, if any, acquired by the state of Oklahoma by virtue of its permit to construct the highway. It is enough to say that the highway was opened and established in accordance with the laws of the state of Oklahoma, and there is no provision for the revocation for the right-of-way acquired thereunder. There is no good reason for holding that the Secretary of the Interior intended to reserve any powers of supervision, or to impose any limitations upon the opening and establishment of the highway. Rather, the use of the words "in accordance with the laws of the State" negatives any intention of the Secretary to impose any restrictions upon its use beyond the duty of the Secretary to safeguard the use of the right-of-way for purposes not in accordance with the laws of the State.

It must be conceded that the use to which the appellee has subjected the right-of-way in question, under a license from the State Highway Commission, is not in derogation of state law, but is clearly within its intendment, and when measured by the laws of the state, such use does not constitute or impose an additional servitude upon the right-of-way, for which the owner of the servient estate is entitled to additional compensation. Okmulgee Producers & Manufacturers Gas Company v. Franks, 177 Okl. 456, 60 P.2d 771, and Nazworthy v. Illinois Oil Company, 176 Okl. 37, 54 P.2d 642.

In considering the question of whether such use of the highway constituted an additional burden or servitude which the Secretary of the Interior did not intend to grant, but intended to withhold or control, our decision is not measured or controlled by state notions of what constitutes an additional servitude or a detriment, or a right granted, or the extent thereof, if granted. Yet, we may well consider the reasoning of the decisions of the state of Oklahoma, which have held that a right-of-way acquired for the primary purpose of opening and establishing a highway may also be used, with the permission of the state opening and establishing the same, for the subsidiary purpose of constructing and maintaining telephone, telegraph, electric and pipe lines, without imposing an additional servitude upon the right-of-way. The authorities are collected in Nazworthy v. Illinois Oil Company, supra. The view is wholly compatible with what seems now to be the generally accepted view that a right-of-way acquired for the primary purpose of opening and establishing a highway may also be subjected to the use of public utility lines, with the permission of the State, without imposing an additional burden or servitude upon the servient estate. No case is cited by the Government, and we have found none inconsistent with the reasoning and conclusions of the Oklahoma authorities.

Under the provisions of 25 U.S.C.A. § 357, second paragraph of section 3, 31 Stat. 1084, the appellee could acquire a right-of-way for the construction and maintenance of its lines across any part of the land in question in accordance with the applicable laws of the state of Oklahoma relating to eminent domain. Laws of 1917, Chapter 230, page 431, Section 3, Compiled Statutes of 1921, Section 6328, 27 O.S.A. § 7. Permission of the Secretary of the Interior is not requi-

site to the exercise of this power, United States v. Minnesota, supra, although he is an indispensable party to the proceedings. Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235. No statute is cited to us, or has come to our attention, which expressly authorizes the Secretary of the Interior to grant a permit or right-of-way, in the nature of an easement for the construction, maintenance, or operation of electric power lines across lands allotted in severalty to individual Indians; neither can we find any justification for the exercise of the ever present inherent power of the Secretary of the Interior to protect the rights of the Indian ward.

The Act of March 11, 1904, 33 Stat. 65, 25 U.S.C.A. § 321, expressly authorizes the Secretary of the Interior to grant a permit or right-of-way in the nature of an easement across Indian lands and reservations, including lands allotted in severalty to any individual Indian but the Act relates exclusively to the construction of pipe lines for the conveyance of oil and gas, and like the Act of February 15, 1901, supra, it does not concern itself with electric power lines.

The Act of March 4, 1911, (36 Stat. 1253, 43 U.S.C.A. § 961. See, also, 16 U.S.C.A. § 5) expressly authorizes the head of the department having jurisdiction over public lands, national forests and reservations of the United States to grant an easement for a right-of-way over the said lands, enumerated, for the construction of electric poles and lines for the transmission and distribution of electric power and other purposes but, like the Act of February 15, 1901, supra, the provisions of this Act are not extended, and do not include lands allotted in severalty to individual Indians.

A consideration of all these statutes, together and apart, and the attendant circumstances which prompted their enactment leads us to the conclusion that the interest of the Secretary of the Interior in ·a right-of-way opened and established by the state, across Indian lands allotted in severalty, in accordance with the laws of the state, is confined to the protection of the Indian ward against the alienation of any part of his land without the payment of just compensation therefor, and to safeguard his substantial rights under the applicable law. Here, the state of Oklahoma has opened and established a highway across certain Indian land allotted in severalty to an individual Indian in accordance with the law of the state in pursuance of a permit from the Secretary of the Interior which the Secretary of the Interior was authorized to grant for that purpose, and for which the state of Oklahoma paid the Secretary of the Interior the sum of $1,275 for the benefit of the restricted Indians. The allotted land, as well as other adjacent land, is the beneficiary of the rural electric line established upon the right-of-way.

The state elected to open and establish a highway in accordance with its laws, by virtue of a permit granted for that purpose, and we can divine no congressional purpose to restrict the grant of the right-of-way beyond the requirements of the state law, in accordance with which the highway was opened and established.

It follows that the Secretary of the Interior has no express or implied authority to require the appellee to obtain a permit for the construction and maintenance of its rural electric lines along, and upon the right-of-way granted to the state for the primary purpose of opening and establishing a highway in accordance with its laws.

The judgment is affirmed.