## ARCHER *v.* GREENVILLE SAND AND GRAVEL COMPANY.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 271.   Argued March 13, 1914.—Decided April 6, 1914.

Equity has jurisdiction of an action to enjoin a continuing trespass even if the injunctive remedy is only asked after final adjudication and although the trespass may have been discontinued before that time.

There is no loss of rights or remedies because a plaintiff does not ask for immediate relief but endures the wrong pending the litigation and until final adjudication.

To constantly dredge gravel from the bed of a stream is a continuing trespass and wrong that entitles the owner to injunctive relief in equity and for which he has no adequate remedy at law.

In Mississippi the common law prevails as to riparian rights, and he who owns the bank owns to the middle of a navigable river subject to the easement of navigation.

It is a question of local law whether the title to the bed of the navigable rivers of the United States is in the State in which the rivers are situated or in the owners of the land bordering on such rivers.

An owner of the upland, who, under the law of the State, owns to the middle of a navigable river, has such an interest in the bed of the stream that, even though he cannot remove gravel therefrom without the consent of the Secretary of War, he can maintain an action to prevent others from doing so.

One sued for removing gravel from the bed of a navigable stream by the owner of the upland cannot demur on the ground that the complaint fails to show that he has not obtained a permit from the Secretary of War. It will not be presumed that the Secretary of War will authorize such removal, and the existence of such a permit must be pleaded.

THE facts, which involve the ownership of sand in the bed of the Mississippi river within the boundaries of the State of Mississippi, are stated in the opinion.

*Mr. Percy Bell* and *Mr. T. M. Miller* for petitioner.

*Mr. John W. Yerkes,* with whom *Mr. George E. Hamilton* and *Mr. John J. Hamilton* were on the brief, for respondents:

This suit cannot be sustained in equity.

Even if equitable jurisdiction exist, plaintiff has not such title to the sand and gravel dredged in the bed of the Mississippi River as will sustain the action.

Plaintiff had a plain, adequate, and complete remedy at law, and there is no ground for equitable relief.

Parties to a suit at law can now be summoned into court and examined by opposing party. Bills of discovery are no longer necessary, and jurisdiction in equity for this purpose (if it has not absolutely ceased as unwarranted) has become inoperative and obsolete.

The bill does not present facts sufficient to support an accounting, and there is no necessity for discovery.

As a preliminary injunction was not asked and the injunction sought is to be part of final decree after title has been decided in plaintiff's favor, the acts complained of, the dredging done, might have ceased long before the final hearing, and unless the cause, for other and recognized reasons, falls properly within equitable jurisdiction, the prayer for such an injunction will not draw equitable jurisdiction to the action.

Plaintiff has no title to, or ownership of, the sand and gravel dredged in the bed of the Mississippi River by defendants.

The two state decisions relied upon to sustain plaintiff's title to the bed of the stream decide one proposition only, that the riparian proprietor on the Mississippi owns at least to low-water mark.

Right of property in the bank of the Mississippi River, between high and low water marks, is not dependent upon,

and does not rest upon, ownership to the thread of the channel.

Riparian rights proper rest upon title to the bank and not upon title to the soil under the water; and riparian proprietors, irrespective of ownership of the bed of a stream, have the right to construct suitable landings for the convenience of themselves and others, subject to public use of the stream and the paramount right of the Federal Government with regard to navigation.

The lands owned by petitioner were originally public lands, and grants by the Government of lands on navigable streams extend only to the limits of high water and as an incident of ownership a riparian proprietor will be limited, according to law of the State, either to low or high water mark, or the middle of the stream.

The bill is too indefinite to show such riparian ownership in plaintiff as will carry with it even qualified or technical ownership of the bed of the stream.

The Mississippi River is a public highway, and rights of adjoining landowners are subject to Federal control regulating commerce and to Federal laws in connection therewith.

Under Federal statutes, it is unlawful for any person to excavate or in any manner alter or modify the course, condition or capacity of the channel of the Mississippi River, unless authorized by the Secretary of War, and if the dredging and removal of sand and gravel were done under this authority, it would not be in law a trespass upon the property of plaintiff.

The court will not assume that extensive, continued work of this kind in the channel of the river would be undertaken and done by defendants without this proper authorization and authority.

In support of these contentions, see *Bardes* v. *Hawarden Bank*, 178 U. S. 524; *Barney* v. *Keokuk*, 94 U. S. 324; *Ex parte Boyd*, 105 U. S. 647; *Brown* v. *Swann*, 10 Peters, 497;

*Bullock* v. *Wilson,* 2 Porter's Reports (Ala.), 436; *Carroll* v. *Carroll,* 16 How. 275; *Delaplaine* v. *Chicago &c. Ry. Co.,* 42 Wisconsin, 214; *Diedrich* v. *R. R. Co.,* 42 Wisconsin, 248; *Drexel* v. *Berney,* 14 Fed. Rep. 268; *Ellis* v. *Davis,* 109 U. S. 485; *Fowle* v. *Lawrason,* 5 Peters, 495; *The Genesee Chief,* 12 How. 443; *Indianapolis Water Co.* v. *American Co.,* 53 Fed. Rep. 970; Judicial Code, § 267, Rev. Stat., § 723; *Lyon* v. *Fishmongers Co.,* L. R. 1 App. Cas. 662; *McCormick Machine Co.* v. *Aultman,* 169 U. S. 606; *Magnolia* v. *Marshall,* 39 Mississippi, 113; Mississippi Code, § 1003; *Morgan* v. *Reading,* 3 S. & M. 366 (Miss.); *Packer* v. *Bird,* 137 U. S. 661; *Railroad Co.* v. *Schurmier,* 7 Wall. 272; Rev. Stat. § 723; *Rindskopf* v. *Platto,* 29 Fed. Rep. 130; *Root* v. *Railroad Co.,* 105 U. S. 189; *Scranton* v. *Wheeler,* 179 U. S. 141; *United States* v. *Chandler Co.,* 229 U. S. 53; *United States* v. *Clark County,* 96 U. S. 211; 26 Stat. 454; *Yates* v. *Milwaukee,* 10 Wall. 497.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Bill in equity to restrain respondent, herein called the Gravel Company, from trespassing upon the lands of petitioner, herein called plaintiff, and from taking sand and gravel therefrom. The bill also prayed for discovery of the amount of gravel which had been taken and an accounting therefor.

The bill alleges the ownership of the lands by plaintiff and describes them by section, range and township and as "lying west of the levee along the river front  . . . and fronting on the said Mississippi River," excepting therefrom two strips 100 feet wide each. That lying in the bed of the river in front of the lands and between the bank of the stream and t' e thread of the river are valuable deposits of sand and gravel which, under the laws of

Mississippi are on the lands of plaintiff, her right and title extending to the lands under the river to the thread of the stream.

That the Gravel Company entered into a contract with the Yazoo & Mississippi Valley Railroad Company to supply sand and gravel for the purpose of grading and raising the line of the railroad and that the Gravel Company employed the E. A. Voight Company to dredge from the bed of the river in front of the lands of plaintiff, and between the river bank and the thread of the stream, the sand and gravel required by it. That the Voight Company is dredging the same over the protest of plaintiff and has taken therefrom large quantities of sand and gravel which it has delivered to the Gravel Company, and the latter company is selling the same to the public and to the railroad company.

That the Gravel Company has refused to cease dredging or to make compensation therefor. That petitioner does not know how much of such material has been taken, but great quantities thereof have been taken, the amounts of which are peculiarly within the knowledge of the Gravel Company.

That the dredging constitutes a continuing trespass upon the lands and property of plaintiff and she is entitled to have the same restrained and to an injunction and accounting and that she is remediless except in a court of equity. She prayed for such relief.

The deeds constituting her title were attached to the bill. The deed conveying title to her, after describing the lands and stating they consisted of 1300 acres, contained the expression, "excepting such parts thereof as have been washed away by the river."

The suit, on the petition of the Gravel Company, was removed to the United States Circuit Court for the Southern District, Western Division, of the State of Mississippi, in which court the Gravel Company filed a demurrer

under nine specifications, alleging want of equity in the bill because of an adequate remedy at law, and want of substance in it because petitioner was not the owner of the sand and gravel in the bed of the river.

The demurrer was sustained and as plaintiff declined to amend her bill, a decree was entered dismissing it. The decree was affirmed by the Circuit Court of Appeals without opinion. A petition for rehearing was made, which was denied without comment, and we are without knowledge of the views of the lower courts or of the grounds upon which their judgments were based except that counsel for plaintiff asserts the Circuit Court sustained the demurrer "solely on the ground of the jurisdiction of the court."

The grounds of demurrer, we think, and the contentions of the parties present two propositions—(1) the right of plaintiff to relief in equity and (2) that she does not show ownership of the property in question as a matter of law. In the latter is involved the question whether a grant of lands bounded by the waters of the Mississippi River, a navigable stream above tidewater, extends to the thread of the channel.

The first proposition is easily disposed of, and, passing by the prayer for discovery and an accounting, we think the bill shows a continuing trespass of such nature and of such character of injury that remedies at law by actions for damages would be inadequate and would, besides, entail repeated litigation. *Mills* v. *N. O. Seed Co.*, 65 Mississippi, 391. Nor is this conclusion disturbed by the fact urged by the Gravel Company, that plaintiff prays for an injunction to be granted only after the hearing of the cause, and although then the rights of the contestants may be finally adjudicated in her favor, or the dredging might cease before that time. The contention is somewhat strange. A plaintiff's right of suit cannot be defeated by a mere supposition that he or she may be successful or that

the defendant may cease to offend against the right asserted. It is in the hope of one or the other of such results that the suit is brought against a present or threatened violation of rights. If wrongs are endured in the meantime, there is no loss of rights or remedies.

We are, therefore, brought to the second proposition, Is plaintiff the owner of the sand and the gravel in the bed of the river?

The law of Mississippi is an element in the case. It first found elaborate discussion and decision in *Morgan & Harrison* v. *Reading,* 11 Mississippi (3 Smedes & Marshall, Rep. 366, 404, and it was held that the common law was adopted for the government of the Mississippi Territory, and that the line of the Territory was the middle of the Mississippi River and that it hence followed that the rights of riparian owners on the east shore must be determined in the State of Mississippi by the common law, and that it was a principle of that law "that he who owns the bank, owns to the middle of the river, subject to the easement of navigation." 3 Kent's Com. (5th ed.) 427, and notes were cited.

The case involved the right of the owner of the bank of the river to charge for mooring purposes on the river above low water mark. The right was sustained upon the principle which we have stated above.

The same principle was announced in *The Steamboat Magnolia* v. *Marshall,* 39 Mississippi, 109. The case was said by the court to be identical in its facts with *Morgan & Harrison* v. *Reading.* The opinion is too long to review or to quote from at any length. It left no case or authority unreviewed nor any consideration untouched, and carefully distinguished the public and private interest in the Mississippi River, the court saying, p. 122, "There is no inconsistency, but, on the contrary, as before suggested, perfect harmony between the *jus privatum* of riparian ownership in public fresh water streams, to the middle of

the river, and the *jus publicum* of free navigation thereof. The *soil* is granted to the riparian proprietor, subject to this public easement." And, again, in criticism of what the court considered an untenable view expressed by the court of another State, it said, p. 124: "This general doctrine is as old as the Year-books, that, *prima facie*, every proprietor on each bank of a river is entitled to the *land* covered with water to the middle of the stream." This being declared to be the law of the State, judgment was entered for charges for the use by the Magnolia of a landing on the river.

But it is said by the Gravel Company that according to the agreed facts there was no 'use or occupation' of the lands of the plaintiff in the case 'beyond high-water mark; the only portion used and occupied being the bank of the river between high and low-water mark,' and that the court identifying the facts with those in the *Morgan Case*, said: "What are the rights of the riparian owners, and what the *jus publicum* incident to the free navigation of the Mississippi, are questions there presented, and are the main questions here again presented." This statement, it is hence contended, limits the binding authority of the opinions "as judicial determinations to a decision of what are the rights of a riparian owner between high and low-water marks as connected with the rights of the public in using the Mississippi River as a public highway and navigable stream." And it is further contended that that "question is in no way connected with the ownership of the bed of the stream or ownership of the gravel and sand in the channel of the stream." It is, therefore, insisted that "the case called for nothing more than a decision as to these bank rights, and if more was intended by the judge who delivered the opinion, it was purely *obiter*."

We cannot concur in this view. The court deduced the right to charge for the occupation of the water between high and low-water marks from the ownership of the soil

to the middle thread of the stream. The elaborate reasoning and research of the opinion were directed to demonstrate that under the common law of the State, riparian ownership extends *ad filum*, and, as a consequence, embraces the right to charge for the use of the water between high and low-water marks for landing purposes, although not for purposes of transit. The case is cited as having that purport in 3 Kent's Comm. 14th ed., star paging 427, where the doctrine of riparian rights as they obtain in the States of the Union is considered and the cases collected. In the sixth edition of Kent the *Magnolia Case* is commended as "a frank and manly support of the binding force of the common law, on which American jurisprudence essentially rests." See also *Shively* v. *Bowlby*, 152 U. S. 1, for a discussion by this court of riparian rights.

The *Morgan* and *Magnolia Cases* were cited in *New Orleans, M. & C. R. R. Co.* v. *Frederic*, 46 Mississippi, 1, 9, 10, to sustain "the right of the owner of the land on the bank of the river to the thread of the stream, subject only to a right of passage thereon as a highway when the stream admits it."

It is further urged that the argument in the *Morgan Case* "in support of the common law doctrine as to the ebb and flow of the tide constituting a navigable stream is in direct opposition and antagonism to the reasoning and opinion of this court in the frequently cited and approved case of the *Genesee Chief*, 12 How. 443, decided in 1851, nine years before the opinion of the State Court was handed down." Other cases are also cited in which it is decided that riparian rights pertain to the bank and distinguish as it is asserted, between rights admittedly riparian and rights of ownership of or to the bed of the river. We need not enter into a discussion of those cases, or assign their exact authority. This court has decided that it is a question of local law whether the title to the beds of the navigable rivers of the United States is in the

State in which the rivers are situated or in the owners of the land bordering upon such rivers. *Packer* v. *Bird*, 137 U. S. 661; *United States* v. *Chandler-Dunbar Co.*, 229 U. S. 53; *Kaukauna Water Power Co.* v. *Canal Co.*, 142 U. S. 254; *St. Louis* v. *Rutz*, 138 U. S. 226; *Shively* v. *Bowlby*, 152 U. S. 1; *Hardin* v. *Jordan*, 140 U. S. 371; *Jones* v. *Soulard*, 24 How. 41.

Plaintiff owning the land to the middle of the stream, it would seem to follow that she must have such property in its soil as to resist a trespasser upon it, such as the bill alleges the Gravel Company to be. The right, however, is denied, and it is said that she is powerless to prevent the Gravel Company from dredging in front of her land because under the laws of the United States she herself could not do so without permission from the Secretary of War. For this, § 7 of the Rivers and Harbors Appropriation Act of September 19, 1890, c. 907, 26 Stat. 426, 454, is cited as making it unlawful for any person to excavate or fill, or in any manner to alter or modify, the course, location, condition or capacity of the channel of said navigable water of the United States unless approved and authorized by the Secretary of War. Whether if she took gravel from the front of her land she would incur the condemnation of this act it is not necessary to decide. She certainly had such an interest in the conditions to prevent one without right from disturbing them. We cannot help observing that the Gravel Company by its conduct has given an interpretation of the act against its contention, unless indeed it wishes to confess itself a violator of public law in order to escape responsibility for a private injury.

The Gravel Company tries to avoid this situation, saying, that a violation of the law cannot be imputed to it because it cannot be assumed that the "extensive and continued dredging, as alleged in the bill, affecting necessarily the channel of the river, would be undertaken without proper authorization and authority, or that

the proper officers of the Government would have allowed these operations to continue." The supposition is easily answered. There is no scheme of improvement of navigation suggested by the bill and it cannot be supposed that the Secretary of War would authorize the Gravel Company to take material from the river for commercial purpose, and the bill alleges such to be the purpose. Besides, if the Gravel Company had authority from the Secretary of War, it is a matter of defence to be pleaded.

The Gravel Company further charges that considering the allegations of the bill and the muniments of title attached to it there is exhibited a possible failure to plead such title in plaintiff as would carry with it even a qualified ownership in the bed of the stream. We do not think so. At any rate, the bill is sufficient against a general demurrer

*Judgment reversed.*