Alvin C. Bohm, State's Attorney of Madison County, Illinois et al., Appellants. James A. Giberson, Plaintiff, v. Fred F. Gerdes et al., Appellees.

Opinion
filed March 1, 1941.

Wm. P. Boynton and Verlie, Eastman & Schlafly, both of Alton, for appellants.

O'Neill & O'Neill, of Alton, for appellees.

Mr. Presiding Justice Stone delivered the opinion of the court.

This cause was begun on November 26, 1930 by the filing of a bill for injunction by Alvin C. Bohm, State's Attorney of Madison county, upon the relation of the Mississippi Lime and Material Company, a corporation, Eugene H. Milner, and James A. Giberson, against Fred F. Gerdes, M. C. Gabriel and Ed Jackson. For convenience, the bill will herein be referred to as the complaint and the relators as the plaintiffs. Appellees will be designated as defendants.

The complaint alleged that there was established in 1850 as part of the city of Alton an area known as "William Russell's Addition to Alton." A portion of the area, fronting on the Mississippi River was dedicated as a public common, for the use of the public generally "never to be owned as individual or private property."

The complaint further alleged that the defendants were making a wrongful use of the commons and encroaching upon it, by driving over the common with teams and trucks, excavating sand therefrom, hauling said sand and selling it. The complaint in substance prayed the issuance of an injunction restraining the defendants from using, occupying, holding or enjoying

the common, for the purpose of going upon, over and across it with teams, trucks or other conveyances for the purpose of hauling any sand therefrom and from excavating therefrom any sand or other materials. Temporary injunction was issued in the language of the complaint. That part of the answer filed by defendants, which is material to the issues herein involved denied that the defendants were digging and excavating sand for sale, and averred that they were merely using a public highway to transport sand taken from sand bars in the Mississippi River.

Thereafter the cause was referred to the master in chancery to take testimony and report the findings of fact and conclusions of law.

The master, in his report filed with the court, found (1) that the land the defendants were enjoined from using was designed and dedicated as a public city common (2) that at the time the injunction was issued the common consisted of low-lying land on the north bank of the Mississippi River, covered with a. growth of willows, traversed by a wagon road, and contained a public city dump (3) that the defendant Gerdes and his employees drove wagons across the common and to a sand bar in the river, took from the bar a great amount of sand, and piled the sand on the common (4) that at the time of the injunction the pile of sand aggregated 3,000 cubic yards (5) that there was a stream of water between the bar from which the sand was obtained and ''the bank of the river, or the southern boundary of the . . . Public City Common'' (6) that the sand was not dug from the common, and that the common was merely used for temporarily storing it, which was not a violation of the legal or prescribed use of the common (7) that the common was used generally by the public in the same manner that the defendants used it, and that Gerdes' use of it did not obstruct others' use of it and in no way interfered with the right of the public to enjoy it (8) that after Gerdes was enjoined from taking sand from the pile others

came and took it, causing Gerdes to sustain a loss and (9) that at the time Gerdes was piling sand on the common it was selling at about $1 a ton.

He recommended the dissolution of the injunction and the dismissal of the defendants.

The plaintiffs objected to all the adverse findings and recommendations of the master, which objections were overruled. They were also overruled by the court, which had ordered them to stand as exceptions.

On the same day the plaintiffs sought to amend their complaint and have the matter re-referred to the master. In substance, the amendments sought would have (1) described the common specifically as extending, on the south, to the middle line of the main channel of the Mississippi River (2) charged the defendants with taking sand from the river at a point north of the middle line of the main channel, and thus from the common, and (3) alleged that the defendants took sand from a navigable stream (the Mississippi River) without permission from the Secretary of War, in violation of 30 U. S. Statutes at Large, page 1151 (U. S. C. A., tit. 33, sec. 403), and thus the defendants had no title to the sand.

The trial court refused to permit the amendments.

Thereafter, the defendant Gerdes filed his amended suggestion of damages, founded principally on the loss of 3,000 cubic yards of sand valued at $3,000. The plaintiffs answered the suggestion by alleging, *inter alia,* that the south boundary of the common extended to the middle line of the main channel of the river, and that the sand was taken from within that boundary and the defendant Gerdes therefore had no title to it; and that no permission of the Secretary of War had been obtained by Gerdes to take the sand from the river, in violation of 30 U. S. Statutes at Large, page 1151 (U. S. C. A., tit. 33, sec. 403).

The trial court sustained the suggestion of damages (except as to a portion seeking counsel fees) and found that Gerdes was entitled to damages in the sum of

$3,000. Thereafter, upon minor corrections in the record, it entered its decree substantially in accordance with the master's recommendations and its finding, dissolving the injunction and awarding judgment in favor of Gerdes against the plaintiffs appellants for $3,000. The instant appeal was thereupon taken.

The error assigned, that the trial court erred in dissolving the injunction granted to plaintiff, is not argued by plaintiffs in their brief and will be presumed to be waived. By the lapse of time, that question has become more or less one of abstract right and we do not deem it necessary to discuss it.

It is assigned as error and argued by plaintiffs that the title of Illinois proprietors to land on a river extends to the thread of the current or main channel, that the defendant dug sand from within such thread and therefore the sand taken by him was taken from the public city common and that he obtained no title thereto, and therefore would not be entitled to damages in the sum of $3,000 assessed by the lower court.

We do not deem it necessary to pass upon the proposition as to whether or not the boundary of the commons was the thread or middle of the channel of the river, as contended by plaintiffs, or merely the bank of the river, as earnestly contended by defendants. The only question necessary for this court to pass upon, is the action of the lower court in allowing the defendant Gerdes the sum of $3,000 damages on the suggestion of damages, after dissolution of the temporary injunction. The material question to be determined is whether or not the defendant Gerdes was the owner of the sand piled admittedly upon the common by said defendant, which it is claimed was taken away by third persons and by the action of the waters of the Mississippi River. We believe that question can be determined upon defendant Gerdes' theory as to how he allegedly took possession of the sand.

There are according to Blackstone, twelve principal modes of acquiring title to personal property, namely

by occupancy, by prerogative, by forefeiture, by custom, by succession, by marriage, by judgment, by gift or grant, by contract, by bankruptcy, and lastly by testament and administration. 2 Blackstone Comm., p. 400.

Schouler says, with reference to acquiring title to personal property by occupancy, which would be the only one of the above classifications that defendant could possibly claim under, ''On the whole . . . the means of acquiring title to chattels by occupancy are strictly confined under modern practice. Not only has the primitive right itself disappeared far into the early domains of history, but occupancy even as applied to perfected chattels which are casually thrown open to ownership has been greatly hedged in by soverign command and public legislation. The tendency of our modern jurisprudence is clearly to take from the individual all title to valuable goods abandoned lost or stolen—to all chattels in fact which have no known owner—and to vest the privileges, present and prospective, of a finder, in the State.'' Schouler, Pers. Prop., vol. 2, p. 30.

In the instant case the sand was not procured from some wilderness, or unclaimed domain, but from the bed of a navigable river, on the water front of a city of thirty thousand people.

We cannot conceive that under the record in this case, defendant Gerdes established his ownership of the sand in question, under any of the nomenclature laid down by Blackstone. He says, ''We got sand out of the river bed in the fall of 1930 and 1931, when the river was low. We put it on the bank of the river.'' (Abst. 26.) What he did was to move a portion of a sand bar, which was part of the bed of a navigable river, to the bank of that river, upon a public common. There is considerable controversy about whether or not defendant Gerdes secured the sand in question from what constituted the common, and much contrariety of opinion as to the boundary of that common,

but there is no question but what he placed this sand upon the common. The following questions were asked and the following answers given by him.

Q. What would you say when the river is low?
A. That was river land.
Q. Who does that belong to?
A. The government.
Q. This sand you piled on the "City Common?"
A. Yes sir. (Record 105.)

So according to his own testimony he merely moved this sand from a bar in the Mississippi River to land established as a public ground of the city of Alton, never to be owned as individual or private property.

It is provided by 30 U. S. Statutes at Large, page 1151 (U. S. C. A., tit. 33, sec. 403) of which court will take judicial notice, that; "It shall not be lawful to excavate or fill, or in any manner to alter, or modify, the course, location, condition, or capacity of any port, roadstead, haven, harbor, canal, lake, harbor or refuge, or enclosure within the limits of any backwater, or of the channel of any navigable river of the United States unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of War prior to beginning the same."

It is contended by defendants that no reference to violation of federal requirements was made by plaintiffs either in their complaint or in the injunction. That was not necessary. It was vital that the defendant Gerdes, before he was entitled to damages, show that he was the owner of the sand, which he claimed others took away and was washed away by the river, at the time the injunction was in full force and effect. He should have affirmatively shown that he had the authorization of the Secretary of War, if that was the fact, under this statute, in order to establish his title to the sand that he moved from the bar in the Mississippi River, which we take judicial notice is a navigable river.

For the purposes of this decision, we hold it immaterial whether the common in question ended at the river bank or extended to the middle of the main channel of the river. There was no question, under his own testimony that he excavated in the channel of a navigable river, for the purpose of taking this sand therefrom.

In *Archer v. Greenville Sand & Gravel Co.*, 233 U. S. 60, 58 L. Ed. 850, the owner of property fronting on the Mississippi River brought suit to enjoin the defendant from dredging and taking sand out of that river. There the court, holding that the plaintiff was entitled to an injunction said, "We cannot help observing that the Gravel Company by its conduct has given an interpretation of the act (Federal Statute, supra) against its contention, unless indeed it wishes to confess itself a violater of public law in order to escape responsibility for a private injury. The Gravel Company tried to avoid this situation, saying, that a violation of the law cannot be imputed to it because it cannot be assumed that the 'extensive and continued dredging as alleged in the bill affecting necessarily the channel of the river, would be undertaken without proper authorization and authority, or that the proper officers of the government would have allowed these operations to continue.' The supposition is easily answered. There is no scheme of improvement of navigation suggested by the bill and it cannot be supposed that the Secretary of War would authorize the Gravel Company to take the material from the river for commercial purposes, and the bill alleges such to be the purpose. Besides, if the Gravel Company had authority from the Secretary of War, it is a matter of a defense to be pleaded."

In the instant case, the answer of the defendants does not set up any scheme of improvement of navigation of the river, rather it alleges, "that they have been, until the temporary injunction in this cause by the complain-

ant prayed and by this Honorable Court ordered, going upon, over and across a certain public roadway, . . . to the Mississippi River, and removing said sand from certain sand bars in the said Mississippi River, and hauling said sand away to sell for profit to divers persons having use for the same." Defendant Gerdes testimony is to the same effect.

Certainly it cannot be supposed that the Secretary of War would consent to the taking out of the bed of a navigable river, 3,000 cubic yards of sand for the personal gain of some individual. If he did so consent it was a matter peculiarly within the knowledge of the defendants and should have been pleaded by them.

The case of *Kessinger v. Standard Oil Company of Indiana,* 245 Ill. App. 376, seems to us to be decisive of the issue involved in the instant case. In that case, the plaintiff had been engaged in excavating and removing sand from the Mississippi River near Wood River, Illinois about 5 miles from the commons involved in the instant case. The Standard Oil Company, the defendant, operated a refinery upstream from plaintiff's plant. Wood River, a tributary of the Mississippi, ran through its property, and defendant dredged Wood River and caught great quantities of mud, silt and rock, to be discharged into the Mississippi, obstructing plaintiff's operations in the removal of sand. There the Appellate Court said, "The record discloses that appellee (plaintiff) did not limit the taking of sand to that part of the river adjoining the land covered by his lease, but took the same from various points in the river, both on the Illinois and the Missouri side. The Mississippi River, being a navigable stream, appellee (plaintiff) had no right to excavate or take sand therefrom without first having obtained the consent of the Secretary of War, so to do . . . Appellee cannot recover substantial damages against appellant (defendant) when as a part of his case he makes proof that he was taking sand from the bed of the Mississippi River without the consent of the Secre-

tary of War, thereby violating a Federal statute. Appellee had no property right in the taking of sand from the Mississippi River, and it therefore follows that the trial court erred in sustaining the demurrer to appellant's . . . pleas.''

Inasmuch as defendant Gerdes did not establish title to the sand in question, the court erred in entering judgment in its decree, for the wrongful issuance of the injunction, in the sum of $3,000.

The decree of the circuit court will be reversed and the cause remanded, with directions to modify said decree in conformity with the views herein expressed.

*Reversed and remanded with directions.*