J. B. MICHAEL & COMPANY, Inc.,
Plaintiff,

v.

IRON WORKERS LOCAL NO. 782 et al.,
Defendants.

Civ. No. 1071.

United States District Court
W. D. Kentucky,
at Paducah.

May 7, 1959.

Wheeler & Marshall, Paducah, Ky., for plaintiff.

Goheen & Schultz, Paducah, Ky., for defendants.

SHELBOURNE, Chief Judge.

This case is before the Court upon plaintiff's motion for a preliminary injunction enjoining the individual defendants from entering upon a portion of the right of way assigned to plaintiff for construction of a portion of federal highways near Paducah, Kentucky; from blocking access of plaintiff to its road machinery and the site of work; from threatening, assaulting and intimidating plaintiff's employees in the prosecution of work under its contract with the Commonwealth of Kentucky, and from picketing in such manner as to interfere by unlawful acts with the performance of work under said contract.

The suit was filed April 23, 1959, and on that date, after hearing testimony produced in open court by the plaintiff,

a temporary restraining order was issued against six local labor unions, the Paducah Building & Construction Trades Council, an association of local unions, and thirty-three individual defendants. A condition of the issuance of the temporary restraining order was the execution of a bond with approved surety, which bond was executed and filed April 23, 1959. The temporary restraining order by its terms restrained only until April 28, 1959, the defendants "from entering upon that part of the right of way assigned to plaintiff for construction before same is open to the public; from blocking access to plaintiff's road machinery and the site of work under said contract; from threatening, assaulting and intimidating the plaintiff's employees in the prosecution of work under said contract in such manner as to interfere by unlawful or violent acts with its performance."

The case was set for hearing on April 28, 1959, on plaintiff's motion for a preliminary injunction. On April 28, 1959, all of the defendants, by counsel, moved to dismiss the action on the ground that the Court lacked jurisdiction because the controversy was not wholly between citizens of different states. Attached to defendants' motion were affidavits of Ward T. Bryant, Financial Secretary and Treasurer and Business Representative of Iron Workers Local No. 782; Jesse Flood, Assistant Business Agent for Teamsters Local No. 236; E. C. Moorefield, Financial Secretary of Carpenters Local No. 559, and W. G. McCloud, Business Representative of Laborers Local No. 1214. The substance of each affidavit was that each of the local unions embraced in its membership individual members who were and are residents of the State of Tennessee and that, therefore, no diversity of citizenship existed between the plaintiff, a Tennessee corporation, and any of the unions. It later developed, in the evidence heard in support of the motion for preliminary injunction, that Cement Masons Local No. 125 and Operating Engineers Local No. 181 each had in its membership residents of the State of Tennessee. It was then apparent that the defendant Paducah Building & Construction Trades Council, composed of five of the defendant local unions, did not possess diversity as to the plaintiff.

Thereupon, plaintiff moved to dismiss without prejudice this action as against the six local unions and the Paducah Building & Construction Trades Council. Plaintiff also moved to dismiss the action without prejudice as to individual defendants C. O. Strong and Wilbur Lawrence, neither of whom was a proper party to the action. Both motions were sustained. After the dismissal of local unions and the association there was complete diversity between the plaintiff and the remaining individual defendants. Jurisdiction was bottomed by plaintiff upon such diversity of citizenship and the alleged power of this Court to issue the preliminary injunction despite the limitations of the Norris-LaGuardia Act, 29 U.S.C.A. § 107.

The individual defendants filed no answer to the complaint and no response to the motion for preliminary injunction, being content to rely upon the motion to dismiss for lack of jurisdiction filed on behalf of all the defendants. But, counsel for defendants resisted the motion for preliminary injunction by cross-examining witnesses for plaintiff and introducing numerous witnesses in their own behalf. They now insist in argument that (1) the Court is without jurisdiction to issue the preliminary injunction because of the provisions and restrictions in Sections 6, 7 and 8 of the Norris-LaGuardia Act (29 U.S.C.A. §§ 106, 107, 108), and (2) the plaintiff does not have right to injunctive relief under the equitable doctrine of "unclean hands", the defendants maintaining that plaintiff participated in and contributed to the acts of violence and lawlessness complained about in the complaint.

### Findings of Fact

Upon the pleadings and testimony heard upon plaintiff's motion for preliminary injunction, the Court makes the following findings of fact:

(1) The plaintiff, J. B. Michael & Company, Inc., is a corporation created under the laws of the State of Tennessee and is a citizen of the State of Tennessee.

(2) The defendants Louis Johnson, Billy Harrington, Billy Russell, Leonard King, Raymond King, Homer W. Ahart, Gerald Chambers, Henry Dickerson, Jr., James L. Duncan, Chester Jones, Rex Lynn, Raymond Phelps, Jimmy R. Robertson, Hubert Smith, Billy Willford, Perry G. Wilkins, Edgar Hawkins, William J. Padon, James C. Omer, William L. White, Robert Luie Lowe, James H. Johnson, Carlos Cooper, Billie Joe Maness, Darrel Elkins, William A. Ahart, Walter F. Myrick, Franklin Elkins, Ray Elliott, Charlie E. Babb, and Donald W. Perryman were and are, each and all, citizens and residents of the Western District of Kentucky.

(3) This Court has jurisdiction because of the diversity of citizenship between the plaintiff and the defendants. Section 1332, Title 28 United States Code.

(4) In November, 1958, plaintiff, pursuant to a contract with the Commonwealth of Kentucky, began the construction of a part of federal-aid highways, including grading, draining and surfacing, the construction of four bridges, and the widening of the surface on existing highways, known as United States Highways Nos. 60, 62 and 68, in McCracken County, Kentucky. At all times material in this action the plaintiff was engaged in work outside the corporate limits of the City of Paducah and was working in McCracken County. By the terms of that contract, plaintiff covenanted to complete the work not later than November 27, 1959, and provisions for liquidated damages as penalty for non-completion by that date were contained in the contract. It was undisputed in the evidence that the completion of the work within the time limit of the contract presents a close or "tight schedule."

(5) From the inception of the work under the contract, plaintiff was under contract with the United Construction Workers, a division of District 50, United Mine Workers of America, that union having been designated as the bargaining agent by a majority of plaintiff's employees.

(6) On or about April 7, 1959, the defendant Louis Johnson, as Executive Secretary of the Paducah Building & Construction Trades Council, advised plaintiff that Iron Workers Local No. 782, Carpenters Local No. 559, Teamsters Local No. 236, Operating Engineers Local No. 181, Cement Masons Local No. 125 and Operating Engineers Local No. 1214, each and all affiliated with AFL-CIO, represented a majority of plaintiff's employees and requested a meeting with a representative of the company not later than April 9th or 10th. Plaintiff made no reply to this demand.

Numerous employees of plaintiff, approximately forty in number, by individual letters addressed to plaintiff at Memphis, Tennessee, each dated April 3, 1959, notified plaintiff not to withhold from the writer-employee's wages any dues, assessments, initiation fees or other payment for or on behalf of the United Construction Workers of District 50 on or after the date of receipt of that letter. Plaintiff was advised in each of the letters, "In the future the appropriate AFL-CIO Building and Construction Trade Craft will represent me as bargaining agent concerning conditions of my employment with your Company."

(7) Under date of April 13, 1959, practically all of the signers of the aforementioned individual letters signed a writing stating, "We, the undersigned employees of J. B. Michael & Company, Inc., McCracken County, Kentucky, Project F-163(10) wish to advise any concerned party that we are satisfied with our present United Construction Workers, U.M.W.A. Union. We also wish to advise that none of the following have signed any other union card and if our name appears on other cards, it has been forged."

In the evidence heard on plaintiff's motion for preliminary injunction, many of

plaintiff's employees, who had signed the letter of April 3, 1959, testified that they signed the statement of April 13, 1959, advising any concerned party that they were satisfied with the United Construction Workers, U.M.W.A. Union, because the business agent of United Construction Workers advised them that unless they signed that statement they would lose their jobs. And, some of them testified that they were dissatisfied because they had not been receiving proper rates of pay for the character of work which they had been required to do.

(8) On April 14, 1959, practically all of the individual defendants began to picket the construction work on a portion of the right of way assigned to plaintiff for construction and which was not then open to the public. By blocking the right of way with automobiles and by blocking access to the construction machinery of the plaintiff, the defendants forced a suspension or cessation of the construction work. The legend on the banners carried by the pickets read, "This contractor refuses to allow his employees to choose their bargaining agent."

The inference, therefore, is that the picketing was for the purpose of forcing plaintiff to recognize labor organizations other than United Construction Workers of District 50 when none of said labor organizations had been legally designated by its employees as their bargaining agent or representative.

(9) On April 21, 1959, plaintiff attempted to resume construction work. When the working employees went to the site of the project violence broke out; rocks were thrown, pick handles and iron bars were used as clubs, windshields and window glasses in plaintiff's automobiles and trucks were broken, and threats of violence were made when an employee of plaintiff attempted to operate the machinery assigned to him. Nine of plaintiff's employees who were attempting to work were injured; seven of the nine were hospitalized, and it required twenty stitches to close a wound inflicted upon the head of one employee. At least one pistol was flourished, and perhaps two, and plaintiff was compelled to again abandon work on the construction project.

(10) Prior to its attempt to resume construction work on April 21, 1959, one of plaintiff's executive officers and its counsel appealed to the Sheriff of McCracken County for protection on April 21, 1959; but the Sheriff, doubtless because of the insufficiency of his forces, was not available on the 21st, and there is no evidence of any effort on the part of the Sheriff to preserve order or prevent the violence which occurred.

(11) An appeal was made by plaintiff to the Regional Office of the National Labor Relations Board on April 24, 1959. The formal charge of an unfair labor practice against the defendant labor organizations was transmitted to the Board. The plaintiff, in that charge, alleged that its construction work was being picketed and access to its construction machinery and the site of its work was being blocked by representatives or labor organizations seeking to force plaintiff to bargain with said organizations when none of same had been certified as the representative of plaintiff's employees. All of its charges were alleged to be violations of Section 158, Subsections (a) (5), (b) (4) (B, C), Title 29 United States Code Annotated. Up to the date of the hearing on the preliminary injunction, no investigation on the part of the Board had been made.

(12) Unlawful and violent acts were committed by the defendants on April 21, 1959, and this Court finds from the evidence that, unless restrained, similar unlawful and violent acts will occur or be continued. Each and all of the defendants were engaged in said unlawful and violent acts and ratified and approved the acts of violence by those associated with them after having actual knowledge of said violent and unlawful acts.

The Court further finds that substantial and irreparable injury to the plaintiff will follow and that it has no ade-

quate remedy at law to prevent or redress such injury; that the Sheriff of McCracken County, charged with the duty to protect plaintiff's property and to prevent the acts of violence, is unable to furnish adequate protection, and that greater injury would result to plaintiff by denial of injunctive relief than would be inflicted upon the defendants by the granting of such relief.

In connection with this last finding, the Court is of opinion that the defendants by the orderly process prescribed by law should proceed, either within their present organization, the United Construction Workers, or through proper selection of their bargaining agents which they may collectively desire to represent them, to present their grievances, if any they have, through the media provided in their contract with the plaintiff. The Court is of opinion that such conduct is the peaceable solution of all the matters involved in this action and will enable a much desired public improvement to proceed without danger to the public or embarrassment to those most vitally concerned.

### Conclusions of Law

The Court makes the following conclusions of law:

(1) The contention of defendants' counsel in oral argument centered largely on their claimed lack of jurisdiction in this Court to enjoin, temporarily or permanently, the defendants; first, because of the limitations and prohibitions of the Norris-LaGuardia Act and, second, because the violence and fighting on April 21st amounted in effect to mutual combat and was precipitated as much or more by plaintiff than by defendants, hence, the plaintiff is not entitled to equitable relief because of the "unclean hands" doctrine.

In his dissenting opinion in Brotherhood of Railroad Trainmen v. New York Central Railroad Company, 6 Cir., 246 F.2d 114, 122, Judge Potter Stewart, now a member of the United States Supreme Court, quoted the following statement of the late Justice Robert H. Jackson: "A vast and utterly unjustifiable part of federal litigation concerns only the question of jurisdiction, on which great time and labor and expense are expended before the merits of a question are ever reached." Then Judge Stewart continued, "Unjustifiable it may be, but the task of determining whether a controversy falls within the limited jurisdiction of the federal courts is an inevitable part of their judicial function."

Therefore, the question first to be determined here is whether this Court has jurisdiction to entertain this action and to grant equitable relief in the form of an injunction. Section 107 of Title 29 United States Code Annotated, provides in part:

"No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—

"(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

"(b) That substantial and irreparable injury to complainant's property will follow;

"(c) That as to each item of relief granted greater injury will be

inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

"(d) That complainant has no adequate remedy at law; and

"(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection."

It was urged by counsel for defendants that because complete diversity did not exist between the plaintiff and all of the defendants at the time this action was filed the jurisdictional defect could not be cured by the dismissal from the action of the defendant unions which had members of the same citizenship as the plaintiff.

In the case of Donnelly Garment Co. v. Dubinsky, 8 Cir., 154 F.2d 38, reference is made to a former appeal of that case, reported in International Ladies' Garment Workers' Union v. Donnelly Garment Co., 8 Cir., 121 F.2d 561, where the appellate court remanded the case to the district court with leave to the plaintiffs and intervenors to amend by dismissing the action as to resident defendants and thereby have complete diversity. See also Lloyd A. Fry Roofing Co. v. Textile Workers Union of America, AFL–CIO, D.C.Pa., 149 F.Supp. 695, and Kerr v. Compagnie De Ultramar and Transmar Corp., 2 Cir., 250 F.2d 860.

█ This Court concludes that it had jurisdiction in this case and that it was proper to permit plaintiff to perfect the claimed diversity by dismissal without prejudice of the defendants as to whom no diversity existed.

█ As to this Court's jurisdiction to issue an injunction within the limits of the Norris-LaGuardia Act, a closer question exists. In the concluding paragraph of the court's opinion in Donnelly Garment Co. v. Dubinsky, supra [154 F.2d 45], it is said that nothing in the Norris-LaGuardia Act denies to federal courts the power to issue an injunction in an action growing out of a labor dispute where the evidence clearly establishes that violence exists. The court says, "Fraud and violence are as unlawful and as reprehensible in a labor controversy as elsewhere." See also Local 205, United Elec., Radio and Mach. Workers of America (U.E.) v. General Electric Co., 1 Cir., 233 F.2d 85.

The facts in the case of Cater Construction Co., Inc., v. Nischwitz, 7 Cir., 111 F.2d 971, are more nearly like the facts involved in the case at bar than any case we have been referred to by counsel or have been able to find, and we do not find where the doctrine in that case has been modified or overruled.

In the Cater case a rival union sought to secure for its members work which the contractor had obligated himself to give to members of the International Brotherhood of Electrical Workers of America. The acts of violence involved there were not as overt as in the case at bar, but threats of violence caused the contractor to close down the work. The court held that the existence of a jurisdictional dispute between two unions was not of controlling importance as to the prohibitions contained in the Norris-LaGuardia Act. The opinion quotes from the Supreme Court case of New Negro Alliance v. Grocery Co., 303 U.S. 552, 58 S.Ct. 703, 707, 82 L.Ed 1012, as follows:

"It was intended that peaceful and orderly dissemination of information by those defined as persons interested in a labor dispute concerning 'terms and conditions of employment' in an industry or a plant or a place of business should be lawful; that, short of fraud, breach of peace, violence, or conduct otherwise unlawful, those having a direct or indirect interest in such terms and conditions of employment should be at liberty to advertise and disseminate facts and information with respect to terms and conditions of employment, and peacefully to persuade others to concur in their views respecting an employer's practices."

■ The position of the plaintiff here is similar to the position of the Cater Company in that action in that it has a valid labor contract with the United Construction Workers of District 50. The court in the Cater case said, "Having contracted with the I.B.E.W., they had no right or authority to contract with the defendants concerning the same work. Under such circumstances, negotiations with the defendants would have been futile, with no hope of settling the dispute." [111 F.2d 977.]

■ An employer is not required to negotiate or mediate a dispute with those who by intimidation, coercion, violence, or threats of destruction of property seek the right to work from those under a valid contract.

Defendants insist that the holdings in the Cater case have been modified or, in effect, overruled by the opinion of the Supreme Court in the case of Brotherhood of Railroad Trainmen, Enterprise Lodge, No. 27, v. Toledo, P. & W. R. R. Co., 321 U.S. 50, 64 S.Ct. 413, 88 L.Ed. 534. We do not so interpret the latter case.

■ It is finally concluded that the plaintiff is entitled to a preliminary injunction enjoining, until the further order of this Court, the individual defendants above named and all persons acting under them or through their order or in concert with them from entering upon the right of way assigned to the plaintiff for construction before same is opened to the public; from blocking access to plaintiff's road machinery and the site of work under the contract, and from threatening, assaulting and intimidating plaintiff's employees in the prosecution of its work under said contract in such manner as to interfere by unlawful or violent acts with its performance.

A preliminary injunction is issued under condition that a bond be executed with approved surety in the sum of $5,-000, conditioned in all respects as required by Section 107 of Title 29 United States Code Annotated.