**POTOMAC ELECTRIC POWER COM-
PANY, Plaintiff,**

v.

**WASHINGTON CHAPTER OF the CON-
GRESS OF RACIAL EQUALITY,**
and
**Julius W. Hobson, Defendants.**
**Civ. A. No. 3238-62.**

United States District Court
D. Columbia.

Nov. 8, 1962.

See also 209 F.Supp. 559.

Richard J. Scupi, Washington, D. C.,
for defendants, for the motion.

Thomas A. Flannery and Stephen A.
Trimble, Washington, D. C., for plaintiff,
opposed.

HOLTZOFF, District Judge.

The questions presented in this case
relate to the power of equity to restrain

serious interference with business operations and continuous damage to property, as well as some aspects of the Norris-LaGuardia Act. This suit is brought by Potomac Electric Power Company as plaintiff against the Washington Chapter of the Congress of Racial Equality and Julius W. Hobson, its Chairman or President, for an injunction restraining them from distributing stamps or pasters with a request that these stamps be affixed to returned stubs of bills sent by the plaintiff to its customers. The matter is before the Court at this time on a motion by the defendants to dismiss the amended complaint. While the motion purports to be made on the alleged ground of lack of jurisdiction, it may be more accurately described as a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. A temporary restraining order was granted *ex parte* at the institution of the action. Subsequently, after a hearing at which oral testimony was taken a preliminary injunction was issued.

The following cause of action is set forth in the amended complaint. The plaintiff is a public utility engaged in the business of distributing electric light and power in the District of Columbia and its environs. Its monthly bills to customers are typewritten on cards. A part of the bill is a stub with a number of small apertures, located in different positions for the purposes of accounting procedure. Customers are requested to return the stubs when making payments. The stubs are then inserted into computing or calculating machines. They mechanically or electronically perform the necessary accounting operation in order to maintain the records of the company. About 15,000 stubs a day are processed in this manner.

The defendants are engaged in a campaign to secure employment for negroes. They communicated with the plaintiff's manager and requested that qualified members of the colored race be employed as linemen and meter readers. Subsequently, the defendants announced that they would start a program to achieve this end and would distribute to the plaintiff's customers several hundred thousand stamps or pasters bearing the words, "We believe in merit hiring." The recipients of these stamps were to be requested to affix them to the stubs of the plaintiff's bills when the stubs were returned to the plaintiff in connection with payments.

These stamps or pasters if affixed to the stubs are likely to obscure or distort the date or one of the amounts printed on the stub, or one of the holes or apertures punched in it. If this happens, it would be impossible to feed the stubs into the calculating machines. The result would be confusion and havoc in the plaintiff's billing and accounting operations. Obviously, the activity of which the plaintiff complains would achieve no useful object, but would merely result in mischief and in vexing and harassing the plaintiff, with a likelihood of serious obstruction and disruption of its business. It is a form of sabotage. The plaintiff asks for a permanent injunction restraining the distribution of the stamps with the request that they be affixed to the stubs of plaintiff's bills.

It is well established that equity may enjoin continuing trespasses, repeated or irreparable injuries to property, or a course of illegitimate interference with business activities, if a remedy by an action for damages is not adequate. This is one of the traditional functions of equity. Watson v. Sutherland, 5 Wall. 74, 18 L.Ed. 580; Donovan v. Pennsylvania Company, 199 U.S. 279, 304, 26 S.Ct. 91, 50 L.Ed. 192; Archer v. Greenville Sand and Gravel Co., 233 U.S. 60, 65, 34 S.Ct. 567, 58 L.Ed. 850; F. Burkart Mfg. Co. v. Case, (C.A.8) 39 F.2d 5; Swan Island Club v. Ansell (C.A.4) 51 F.2d 337, 339; United States v. Colvard (C.A.4) 89 F.2d 312, 314. Obviously, an award of damages would not be an adequate remedy in this instance.

The applicable principles are ably summarized in 4 Pomeroy's Equity Jurisprudence, Section 1357, as follows:

"If a trespass to property is a single act, and is temporary in its

nature and effects, so that the legal remedy of an action at law for damages is adequate, equity will not interfere. The *principle* determining the jurisdiction embraces two classes of cases, and may be correctly formulated as follows: 1. If the trespass, although a single act, is or would be destructive, if the injury is or would be irreparable, —that is, if the injury done or threatened is of such a nature that, when accomplished, the property cannot be restored to its original condition, or cannot be replaced, by means of compensation in money,— then the wrong will be prevented or stopped by injunction. 2. If the trespass is *continuous* in its nature, if repeated acts of wrong are done or threatened, although each of these acts, taken by itself, may not be destructive, and the legal remedy may therefore be adequate for each single act *if it stood alone*, then also the entire wrong will be prevented or stopped by injunction, on the ground of avoiding a repetition of similar actions * * *. In both cases the ultimate criterion is the inadequacy of the legal remedy. The legal remedy is not adequate simply because a recovery of pecuniary damages is possible. It is only adequate when the injured party can, *by one action at law*, recover damages which constitute a complete and certain relief for the whole wrong,—a relief virtually as efficient as that given by a court of equity." (Emphasis original.)

■ It is urged by counsel for the defendants, however, that this case presents a labor dispute and that, therefore, injunctive relief is barred by the Norris-LaGuardia Act, which regulates the granting of injunctions in labor disputes. Obviously, in this instance there is no labor dispute in the ordinary sense of that term: there is no dissension between employer and his employees; there is no disagreement between an employer and a labor organization; and there is no controversy between an employer and applicants for employment or an organization of applicants. The defendant organization does not purport to include applicants for employment in its membership, nor does it profess to be their authorized representative. It interjects itself as an interloper. It is urged, however, that the situation presents a labor dispute within the meaning of the Norris-LaGuardia Act, as construed in New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012. In that case an association of negroes in an effort to persuade a grocery company to employ colored clerks, organized a group of pickets, who patrolled in front of one of the defendant's stores and carried placards urging prospective customers not to patronize the store because no negroes were employed there. The Supreme Court held that this situation constituted a labor dispute within the meaning of the Norris-LaGuardia Act. The case is distinguishable on its facts, in that the activities of which the company complained consisted of peaceful picketing in front of the store, instead of far-reaching consequential injuries such as are confronted in the case at bar. As Mr. Justice Roberts pointed out (p. 559, 58 S.Ct. 706):

> "The patrolling did not coerce or intimidate respondent's customers; did not physically obstruct, interfere with, or harass persons desiring to enter the store, the picket acted in an orderly manner, and his conduct did not cause crowds to gather in front of the store."

The objectionable activities in the instant case are of an entirely different character and cannot be said to be a legitimate concomitant of any labor dispute, even if this term can be stretched in the far-fetched manner urged by counsel for the defendants. For the purposes of this case, however, it is not necessary to decide whether a labor dispute is presented here, because even if the controversy were to be deemed a labor dispute and the Norris-LaGuardia Act were applica-

ble, it would not bar the relief for which the plaintiff prays.

■ The Norris-LaGuardia Act, 29 U.S.C. §§ 101, 113, places certain restrictions on the issuance of injunctions in any case involving or growing out of a labor dispute. The statute has two aspects. First, it provides that certain specified activities may not be enjoined under any circumstances (Sec. 104). Among the enumerated actions in this group are strikes; distributing information as to the existence of a labor dispute, whether by advertising, picketing, or any other method not involving fraud or violence; and similar actions generally regarded as legitimate. Second, the Act places certain restrictions and limitations on granting injunctions against any other activity connected with a labor dispute (Sec. 107 et seq.) Thus, the law requires that there be a showing that substantial or irreparable injury would follow to the plaintiff's property if an injunction is denied; that greater injury would be inflicted upon the plaintiff by the denial of the relief than would be inflicted on defendants by the granting of relief; that the plaintiff has no adequate remedy at law; that public officers are unable or unwilling to furnish adequate protection; and that the plaintiff has made every reasonable effort to settle the dispute (Sec. 108). There are numerous instances in which injunctions were granted in labor disputes upon compliance with these prerequisites of the Norris-LaGuardia Act. The following cases are illustrative: Newton v. Laclede Steel Co., (C.A.7) 80 F.2d 636; Mayo v. Dean (C.A.5) 82 F.2d 554; Cater Const. Co. v. Nischwitz (C.A.7) 111 F.2d 971; J. B. Michael & Company v. Iron Workers Local No. 782 (W.D.-Ky.) 173 F.Supp. 319.

The amended complaint in the case at bar sufficiently meets the requirements of the Norris-LaGuardia Act. It shows not only generally, but in detail, that substantial and irreparable injury would be sustained by the plaintiff if an injunction is not granted. It avers that greater injury would be inflicted upon the plain-

tiff by a denial of the relief than upon the defendants if an injunction were issued. It alleges that the plaintiff has no adequate remedy at law. It shows that public officers are unable or unwilling to furnish adequate protection against the activities involved in this case.

It is objected that there is no allegation that the plaintiff has made every reasonable effort to settle the dispute. It has been held, however, that such an allegation is not indispensable and that whether the plaintiff failed to make reasonable efforts to settle the dispute is a question of fact to be determined at the trial. If such efforts are required, it is sufficient if they are exerted at any time prior to the final decree. It is not contemplated that they must be initiated before the institution of the action. They may be dispensed with altogether if under the circumstances it would not be reasonable to expect the plaintiff to do anything in that direction.

In Donnelly Garment Co. v. International L. G. W. Union, (C.A.8) 99 F.2d 309, 317, Judge Sanborn made the following apt observations that are applicable to the situation presented here:

"Accepting as true all of the allegations of the complaints, what effort on the part of the plaintiffs to settle the controversy with the defendant union would have been a reasonable effort, and what reasonable effort did the plaintiffs fail to make? Looking at the matter realistically, it would seem that at no time after the plaintiffs were notified by their employees of their refusal to accept the defendant union as a bargaining agent, was there anything which the plaintiffs could reasonably have offered to the defendants by way of compromise or settlement of the dispute which had arisen, except, perhaps, an explanation of the situation and a prayer for peace."

Actually, the amended complaint does, in fact, contain appropriate allegations on this point. It is stated in Paragraph 12 that the plaintiff endeavored to communi-

cate with the defendant by telephone, both in Washington and New York, but received no answer to its telephone call in New York, and was unable to find a telephone number for either of the defendants in the District of Columbia. Under the circumstances, it is not discernible what more the plaintiff could have done in this direction.

Finally, it must be observed that under modern Federal procedure, pleadings are no longer strictly construed, and precise and complete averments to make out a cause of action are no longer required. If a sufficient state of facts can possibly be proved within the allegations of the complaint, it may not be dismissed.

Motion to dismiss the amended complaint is denied.