Pearle TOINEETA, Plaintiff,

v.

Cecil D. ANDRUS, Secretary of the Interior; Sidney L. Mills, Acting Assistant Secretary of the Interior; William Hallett, Commissioner of Indian Affairs; Harry Rainbolt, Director of the Eastern Area Office Bureau of Indian Affairs; Jeff W. Muskrat; Robert Evans; Jerome Parker; John Crowe; Leroy Wahneetah; Glen Joe Bradley; Thomas Lambert; Bertha Saunooke; Robin Toineeta; Quentin Beck; Gerard Parker; Ammons Rattler; Woodrow Lossiah; Jonathon Taylor; Albert Martin; John Henry Maney; Lawrence Thompson; Myrtle Jenkins; Jesse Littlejohn; McKinley Swimmer; Tom Bradley; Ned Long and Mose Wachacha, individually and in their official capacities, Defendants.

No. B–C–80–97.

United States District Court,
W. D. North Carolina,
Bryson City Division.

Aug. 15, 1980.

James H. Holloway, Western N. C. Legal Services, Cherokee, N. C., for plaintiff.

Ben Oshel Bridgers, Holt, Haire & Bridgers, Sylva, N. C., for Indian defendants.

Max O. Cogburn, Jr., Asst. U. S. Atty., Asheville, N. C., for Government.

WOODROW WILSON JONES, Chief Judge.

The Plaintiff, Pearle Toineeta an enrolled member of the Eastern Band of Cherokee Indians brought this action against certain federal officials and members and officials of the Tribal Council, seeking a writ of mandamus against the federal officials and declaratory and injunctive relief against the Council and its members and officials relative to her possessory rights in tribal lands. She alleges that the Indian Defendants entered into a conspiracy to deprive her and did deprive her of her property without due process of law by assigning a part of her tribal lands held under a possessory right to the Defendant, Jerome Parker, an official of the Tribal Council and an enrolled member of the Tribe. She alleges that the Federal Defendants unlawfully approved the assignment and she seeks a writ of mandamus ordering their withdrawal of such approval. She seeks a declaratory judgment that the acts of the Indian Defendants violated her constitutional rights and injunctive relief setting aside the council's assignment of the possessory right to the Defendant, Jerome Parker.

It appears that the Plaintiff brought the action under 42 U.S.C.A. § 1983 and § 1985(3); 28 U.S.C.A. §§ 2201–2202 and 5 U.S.C.A. § 702 and contends the Court has jurisdiction under 28 U.S.C.A. § 1331(a); § 1343(1–4); § 1337 and § 1361 and 5 U.S. C.A. § 702.

The Indian Defendants have moved to dismiss pursuant to Rule 12(b), Federal Rules of Civil Procedure for lack of jurisdiction and that the complaint fails to state a cause of action upon which this Court can grant relief. The motion was heard on July 21, 1980 at Bryson City and upon consideration of the pleadings, affidavits, briefs and arguments of counsel the Court now enters its findings and conclusions.

In an apparent effort to get around the holding of the Supreme Court in *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 55 L.Ed.2d 106 (1978) and the holding of the Court of Appeals for the Fourth Circuit in *Crowe v. Eastern Band of Cherokee Indians, Inc.*, 584 F.2d 45 (4th Cir. 1978), the Plaintiff denies that her action is brought under the Indian Civil Rights Act of 1968, 25 U.S.C.A. § 1302 but it is laid under 42 U.S.C.A. § 1983 and § 1985(3) for denial of civil rights declared by Congress in the Indian Civil Rights Act. The question then arises as to whether the Plaintiff has stated a cause of action under either of these statutes.

The basis for the Plaintiff's § 1983 claim is that the acts of the Indian Defendants constituted state action thereby subjecting them and their acts to the jurisdiction of this Court under 28 U.S.C.A. § 1343(3). This contention is based solely upon the fact that in 1889 the Eastern Band of Cherokees was given a corporate charter by the Legislature of North Carolina. It becomes necessary to review a bit of the history of the Eastern Band of Cherokees and how they attained the legal status as a Tribe.

In the case of *United States v. Wright*, 53 F.2d 300 (4th Cir. 1931), Chief Judge Parker in writing for the Court outlined the history of the Cherokees in North Carolina and their final recognition as a tribe. He stated that the original Cherokee Tribe under the Treaty of New Echota in 1835 (7 Stat. 478) surrendered all right to any lands in North Carolina, and agreed to remove from the state, in consideration of the payment of a sum of money by the United States and a grant of land beyond the Mississippi. A substantial number of Cherokees did not wish to give up their homes in North Carolina and move west. Article 12 of the treaty was amended to provide that those Cherokees who desired to stay and become citizens of the State could do so if they were qualified to take care of themselves and their property. In 1848 Congress required a roll to be made of "each member of every family of the Cherokee Nation of Indians that remained in the State of North Carolina at the time of ratification of the treaty of New Echota ... and who have not removed west of the Mississippi ..." so that $53.33 might be set aside for them. Interest would be paid annually to each Indian on the $53.33 but if he would move west the

entire sum would be paid to him at one time. 9 Stat. 264 (1848).

In 1855 Congress provided for the direct payment of the sum authorized in 1848 to the individual members "of the Cherokee Nation of Indians, that remained in the State of North Carolina." The Act provided in part:

"That said Secretary shall be first satisfied that the State of North Carolina has, before such payment, by some appropriate act, agreed that said Cherokees may remain permanently in that State anything in the treaty of eighteen hundred and thirty–five to the contrary notwithstanding." 10 Stat. 700

The State of North Carolina responded by enacting a statute permitting said Cherokees to remain in the State and in 1889 the North Carolina Legislature issued a corporate charter under the name of Eastern Band of Cherokee Indians with power to sue and be sued, plead and implead and to exercise all other powers belonging to corporations under the laws of the State. Chapter 211, Private Laws of North Carolina (1889). This Act also validated, as against the State, titles or conveyances of land made to the band or to any person in trust for the benefit of the Cherokees in North Carolina.

In the meantime land was being purchased for and on behalf of the Tribe and eventually the Qualla Boundary of about 50,000 acres was assembled, which constitutes the present Reservation.

By an Act of Congress dated June 4, 1924, c. 253, 43 Stat. 376, 25 U.S.C.A. § 331, Note, the Corporation, Eastern Band of Cherokee Indians of North Carolina, was authorized to convey to the United States of America, in trust, all land, money, and other property of said band for final disposition as provided in such Act. As of this date the land is still held by the United States in trust for the members of the Tribe.

While the Eastern Band of Cherokee Indians was never a nation nor did it enter into any treaty with the United States it nevertheless has been recognized by the Congress as an Indian Tribe. It is true that the members of the Tribe are citizens of the State of North Carolina and the State issued a corporate charter to the Eastern Band of Cherokee Indians, Inc. but Congress has assumed under its constitutional power authority over this Tribe. This conclusion is clearly borne out by the various Acts of Congress.

As pointed out by Chief Judge Parker in *Wright* the first recognition by the government of the United States of the Indians who remained in North Carolina was in the Act of July 29, 1848, 9 Stat. 252, 264, § 4 (31 U.S.C.A. § 711 [20] and section 5, page 265). In the Act of July 27, 1868, 15 Stat. 228 the Congress further recognized these Indians by providing that the Secretary of the Interior should cause a new roll or census to be made "of the North Carolina or Eastern Cherokees," and that thereafter the Secretary should "cause the Commissioner of Indian Affairs to take the same supervisory charge of the Eastern or North Carolina Cherokees as of other tribes of Indians."

The Court of Appeals for the Fourth Circuit in *Wright* after carefully examining the unique history of the Eastern Band of Cherokee Indians of North Carolina found and concluded that the Congress recognized them as constituting a tribe, at least, within the meaning of the word as it is used in the Constitution of the United States, and that Congress has the power to legislate for their protection despite their North Carolina citizenship. The Court further held that as long as their lands are held in trust by the United States or restrictions on alienation are placed upon the allotted lands, the Congress has the power to exempt said lands from taxation by the state or county.

 It cannot under any stretch of the imagination be contended that this tribe or any other tribe of Indians is a state. Ordinarily an Indian tribe is not subject to the law of a state except where the United States has given its consent. *Worcester v. Georgia*, 6 Pet. (U.S.) 515, 560, 31 U.S. 515, 8 L.Ed. 483 (1832). The unique history of the Eastern Band of Cherokee Indians

changes this rule so that they are subject to state law except where the Congress has pre–empted the field by exercising its constitutional authority by assuming "the same supervisory charge of the Eastern or North Carolina Cherokees as of other tribes of Indians."

 The granting of a charter of incorporation to the Tribe by the State of North Carolina does not make the Tribe an arm or agency of the State. No court has held that the mere granting of certificates of incorporation to the numerous private corporations of the various states would constitute such state action as to subject the corporations and their employees to liability under Section 1983. If the charter could be construed as that of a municipal corporation the prior decisions of the Court of Appeals for the Fourth Circuit and the Acts of the Congress would nullify such construction because it is now a tribe.

In *Wright* and *Haile v. Saunooke*, 246 F.2d 293 (4th Cir. 1957); *United States v. Boyd*, 83 F. 547, 555 (4th Cir. 1897); *United States v. Colvard*, 89 F.2d 312 (4th Cir. 1937); *United States v. 7,405.3 acres of land*, 97 F.2d 417 (4th Cir. 1938); *Blair v. McAlhaney*, 123 F.2d 142 (4th Cir. 1941), and *United States v. Parton*, 132 F.2d 886 (4th Cir. 1943), the Court has held that the Eastern Band of Cherokee Indians is an Indian Tribe within the meaning of the Constitution and laws of the United States. These decisions and the Acts of Congress clearly dictate the conclusion that Eastern Band of Cherokee Indians is not a municipal corporation or any other agency of the State of North Carolina and that as a matter of law the Indian Defendants are not state employees nor were they acting under color of state law at the times alleged in the complaint. It therefore follows that the complaint does not state a cause of action under 42 U.S.C.A. § 1983 upon which this Court can grant relief.

In order to state a cause of action under 42 U.S.C.A. § 1985(3) the Supreme Court in *Griffin v. Breckenridge*, 403 U.S. 88, 101, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) held that the complaint must allege:

" . . . that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States."

The Court further held:

"The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or, perhaps otherwise class–based invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all."

Since the Plaintiff and all of the Indian Defendants are members of the Tribe and are Indians there can be no meritorious claim of invidious racial discrimination and the Plaintiff claim of a class–based invidiously discriminatory animus behind the action of the conspirators is without merit. The allegation that the wrongs alleged here were caused by the conflict between those Indians who want to use property on the Reservation for commercial use and those who want to use it for "the purpose of traditional subsistence livings" is not the kind of class–based, invidious discrimination the Congress and the Supreme Court had in mind. Surely, the Court had in mind when it used the phrase "a class–based invidiously discriminatory animus" more than a fuss between some Indians who want to use some of the mountain land of this Reservation for a camping ground and some who want to use it in traditional subsistence living, such as hunting, fishing and growing corn.

The Court concludes that the complaint does not state a cause of action under 42

U.S.C.A. § 1985(3) upon which relief can be granted.

In a case with facts similar to the allegations set forth in the complaint here this Court held that it had jurisdiction of the subject matter and of the parties and ruled that the tribal council had taken the Plaintiff's property without due process of law and ordered the council to restore the land to her. The Court of Appeals for the Fourth Circuit affirmed this Court's finding of jurisdiction under the Indian Civil Rights Act, 25 U.S.C.A. §§ 1301–1302(8), and the holding that the Plaintiff's property had been taken without due process of law. But the Court of Appeals reversed this Court's order that the council restore the property to the Plaintiff. In *Crowe v. Eastern Band of Cherokee Indians, Inc.*, 506 F.2d 1231 (4th Cir. 1974) the Court held:

> "Accordingly, while we affirm the district court in setting aside the council's action, we reverse the judgment below insofar as it restored to the plaintiff the possessory holding in the eleven acres of land claimed by her under the Land Division Agreement between the heirs of W. T. Saunooke. Upon remand the court should direct the defendant Indian Tribe to reconsider the division of Saunooke's possessory holdings in a proceeding which will accord to the plaintiff and the other interested parties the rights of procedural due process and equal protection of the tribal laws to which they are entitled under the Indian Civil Rights Act."

Since the Crowe case was decided the Supreme Court in *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 55 L.Ed.2d 106 (1978) held that Title I of the Indian Civil Rights Act does not expressly authorize the bringing of civil actions for declaratory or injunctive relief to enforce its substantive provisions and the Act may not be interpreted to impliedly authorize such actions against a tribe or its officers in the federal courts. After reviewing the legislative history of the Act the Court said:

> "Given this history, it is highly unlikely that Congress would have intended a private cause of action for injunctive and declaratory relief to be available in the federal courts to secure enforcement of § 1302."

After discussing the committee report and the floor debate the Court observed

> "These factors, together with Congress' rejection of proposals that clearly would have authorized causes of action other than habeas corpus, persuade us that Congress, aware of the instrusive effect of federal judicial review upon tribal self–government, intended to create only a limited mechanism for such review, namely, that provided for expressly in § 1303."

The Court continued:

> "As we have repeatedly emphasized, Congress' authority over Indian matters is extraordinarily broad, and the role of courts in adjusting relations between and among tribes and their members correspondingly restrained. See *Lone Wolf v. Hitchcock*, 187 U.S. 553, 565, 23 S.Ct. 216, 221, 47 L.Ed. 299 (1903). Congress retains authority expressly to authorize civil actions for injunctive or other relief to redress violations of § 1302, in the event that the tribes themselves prove deficient in applying and enforcing its substantive provisions. But unless and until Congress makes clear its intention to permit the additional intrusion on tribal sovereignty that adjudication of such actions in a federal forum would represent, we are constrained to find that § 1302 does not impliedly authorize actions for declaratory or injunctive relief against either the tribe or its officers."

After *Martinez* the Court of Appeals for the Fourth Circuit specifically held that this Court did not have jurisdiction under the Act to hear an action against the Eastern Band of Cherokee Indians. *Crowe v. Eastern Band of Cherokee Indians, Inc.*, 584 F.2d 45 (4th Cir. 1978). The Plaintiff in this cause cannot avoid the ruling of *Martinez* and *Crowe* merely by substituting the individual tribal members and officers in the place of the tribe and bringing her action under 42 U.S.C.A. §§ 1983 and 1985(3). This is especially true where the

Plaintiff seeks declaratory and injunctive relief to declare null and void the action of the Defendants performed as council members and officers and order them to restore the property to the Plaintiff which the Defendants can only do as council members and officers of the tribe. It appears that any reasonable construction of *Martinez, Nettie Crowe v. Eastern Band*, 506 F.2d 1231 (4th Cir. 1974) and *Crowe v. Eastern Band, supra,* would dictate that the complaint does not state a cause of action under which the Court could grant relief and that this Court lacks jurisdiction to entertain the action against the Indian Defendants.

The Congress has had two years since *Martinez* to expressly authorize the bringing of civil actions for declaratory or injunctive relief to enforce the substantive provisions of the Indian Civil Rights Act but it has not done so.

The Court concludes that the action should be dismissed as to the Indian Defendants and a judgment in accordance therewith will be entered.